UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_Dr. Richard Cordero_

    Appellant and creditor

    v.

_David DeLano and Mary Ann DeLano_

Respondents and debtors in bankruptcy

**APPELLANT'S BRIEF**

05-cv-6190L

**FILED**

DEC 2 7 2005

CLERK, US DISTRICT COURT, WDNY

Dr. Richard Cordero, appellant and creditor, states under penalty of perjury the following:

# Tables of Contents

A. Tables of Authorities Cited, References, and Headings ................................ ii

   1. Authorities Cited in the Brief and
      in the Designated Items ................................................................ iii

   2. References in the Brief
      to Designated Items and the Addendum .......................................... xiv

   3. Headings of the Body of the Brief.................................................... xxiv

B. Basis of Appellate Jurisdiction ................................................................ 1

C. Issues Presented and Standard of Appellate Review .................................... 1

D. Statement of the Case ........................................................................... 1

E. The argument ..................................................................................... 10

F. Conclusion and Relief Sought.................................................................. 50

     Proposed Order ......................................................................... 51

Certificate of Service.............................................................................. 60

Designated Items in the Record ........................ (in a separate volume) D:1-508g

Table of Items in the Addendum to the Designated Items............................ D:xv

     Addendum.............................................................. Add:509-1155

Transcript ..................................................................................Tr:#

     refers to its page numbers on upper right corners)

# Tables of Authorities Cited, References, and Headings

**1. Authorities Cited in the Brief and the Designated Items** ..................... iii

  **a.** Constitutional Provisions ............................................................. iii

  **b.** Cases ........................................................................................... iii

      **i)** Cases Cited in the Designated Items ........................................ iv

  **c.** Statutes ......................................................................................... v

      **ii)** Statutes Cited in the Designated Items ..................................... vi

  **d.** Other Authorities .......................................................................... ix

      **iii)** Other Authorities Cited in the Designated Items ..................... ix

  **e.** Rules ............................................................................................ ix

    **1)** FRBkrP ...................................................................................... ix

    **2)** FRCivP ........................................................................................ x

    **3)** District Local Rule, WDNY ....................................................... x

      **iv)** Rules Cited in the Designated Items ........................................ x

        **(i)** FRBkrP ................................................................................ x

        **(ii)** FRCivP ............................................................................... xi

        **(iii)** FREvi ............................................................................... xii

        **(iv)** FRAP ............................................................................... xii

      **v)** Regulations Cited in the Designated Items ............................... xiii

  **f.** Treatises ...................................................................................... xiii

      **vi)** Treatises Cited in the Designated Items ................................. xiii

**2. References in the Brief to Designated Items and the Addendum** ..... xiii

  **a.** References to the DeLano Debtors' Petition for Bankruptcy ....... xiii

    **1)** Statement of Financial Affairs ................................................. xiii

    **2)** Schedule A ................................................................................ xiii

    **3)** Schedule B ................................................................................ xiii

　Dr. Cordero's appeal of December 21, 2005, to WDNY from Judge Ninfo's decision in *DeLano*

4) Schedule F ................................................................ xiv

5) Chapter 13 Debt Repayment Plan ................................... xiv

**b.** References in the Brief to the Designated Items ............................... xiv

**c.** References in the Brief to the Addendum ...................... xviii

**d.** References in the Brief to the Transcript ........................... xxii

**3. Headings of the Body of the Brief** ....................... xxiv

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## 1. Authorities Cited in the Brief and the Designated Items

### a. Constitutional Provisions

1. Fifth Amendment ------------------------------------------------------------ 47

### b. Cases

2. 411 U.S. 1042 ------------------------------------------------------- 42

3. 411 U.S. 989 -------------------------------------------------------- 42

4. *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557. 568 n.15. 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987) --------------------------------------- 46

5. *Devaney v. Chester*, 813 F2d 566, 569 (2d Cir. 1987)------------------ 46

6. *In re Bell*, 225 F.3d 203, 209 (2d Cir. 2000) ------------------------------ 1

7. *In re Burrows* ---------------------------------------------------- 41, 42

8. *In re Drexel Burnham Lambert Inc.,* 861 F. 2d 1307, 1309 (CA2 1988) ---------------------- 44

9. *In re G. Marine Diesel Corp.,* 155 B.R. 851 (Bkr. E.D.N.Y. 1993) ------------------------- 38

10. *In re Michigan-Wisconsin Transp. Co.,* 161 B.R. 628 (Bkr. W.D. Mich. 1993) -------------- 41

11. *In re Taylor*, 289 B.R. 379 (Bkr. N.D. Ind. 2003)--------------------------------------------

12. *In re Youroveta* ------------------------------------------------------- 41

13. *Liteky v. United States,* 510 U. S. 540, 548 (1994)------------------------ 44

14. *Microsoft Corp. at 1303*-------------------------------------------- 44

    *..... Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (REHNQUIST, C. J.) ------------------------------------------------------------------------------------ 44

16. *n re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ----------------------------------------------------------------------------------- 46

17. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000) ------------------------------- 41

18. *Stern v. U.S. District Court for the District of Massachusetts*, 214 F.3d 4 (s 1st Cir. 2000) ------------------------------------------------------------------------------------- 45

19. *Whitney v. Dresser*, 200 U.S. 532, 534, 26 S.Ct. 316,317, 50 L.Ed. 584 (1906) ---------------------------------------------------------------------------------------- 42

## i)  Cases Cited in the Designated Items

20. *Aetna Life Insurance Co. v. Lavoie et al.*, 475 U.S. 813; 106 S. Ct. 1580; 89 L. Ed. 2d 823 (1986) ------------------------------------------------------------------- D:421

21. *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir., 1997) ------------------ D:260

22. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) ------------------------- D:437

23. *Ex parte McCarthy*, [1924] 1K. B. 256, 259 (1923) ------------------------------------ D:421

24. *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 645 (1st Cir. 2000) ----------- D:438

25. *Green Construction Co. v. Kansas Power & Light Co.*, 1 F.3d 1005 (10th Cir. 1993) ------------------------------------------------------------------------------------- D:438

26. *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 239-40 (2d Cir. 2001) ------------------- D:437

27. In re Babcock & Wilcox Co., 2002 U.S. Dist. LEXIS 15742, at 6 (E.D.La. 2002) ------------------------------------------------------------------------------------- D:450

28. *In re: Certain Underwriter Defendants. In re Initial Public Offering Securities Litigation*, 294 F.3d 297 2002 U.S. App. LEXIS 6487; Fed. Sec. L. Rep. (CCH) P91,755 (2d Cir. 2002) ------------------------------------------------- D:421

29. *In re Drexel Burnham Lambert Inc.*, 861 F. 2d 1307, 1309 (CA2 1988) ------------ D:356, 420

30. *In re: International Business Machines*, 618 F.2d 923, at 929 (2d Cir.1980) ------------- D:419

31. *In re Murchison*, 349 U.S. 133 (1955) ------------------------------------------------- D:420

32. *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998), cert. denied, 525 U.S. 854, 119 S.Ct. 133, 142 L.Ed.2d 108 (1998) ----------------------------------------------- D:261

33. *In re Wells*, 51 B.R. 563 (D.Colo. 1985) --------------------------------------------- D:450

34. *Indiana Lubermens Mutual Ins. Co. v. Timberland Pallet and Lumber Co., Inc.*, 195 F.3d 368, 374 (8th Cir 1999) ------------------------------------------------- D:438

35. *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir 1998) ------------------------------- D:438

36. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988)-------------------D:419

37. *Liteky* v. U.S., 510 U.S. 540, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994) -----------D:356, 420

38. *Matter of Unimet Corp.*, 74 B.R. 156 (Bankr. N.D. Ohio 1987) ----------------------------D:450

39. *Microsoft Corp. v. U.S.*, 530 U. S. 1301, (2000) (REHNQUIST, C. J.) -------------------D:356

40. *Moore v. Time. Inc.*, 180 F.3d 463, 463 (2d Cir.), cert. denied, 528 U.S. 932,
    120 S.Ct. 331, 145 L.Ed.2d 258 (1999)-----------------------------------------------------D:269

41. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
    13 S.Ct. 1489, 509 U.S. 380, 123 L.Ed.2d 74 (1993)-----------------------------------D:435

42. *Sprewell v. Golden State Warriors*, 231 F.3d 520, 530 (9th Cir., 2000) ------------------D:260

43. *U.S. v. Brinkworth*, 68 F.3d 633 (2d Cir. 1995) --------------------------------------------D:421

44. *U.S. v. Connery*, 867 F.2d 929, 934 (reh'g denied)(6th Cir. 1989), appeal after
    remand 911 F.2d 734 (1990) ------------------------------------------------------------D:251, 446

45. *U.S. v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)--------------------------------------D:419

46. *Warren v. Guelke*r, 29 F.3d 1386, 1390 (9th Cir., 1994)-------------------------------------D:269

47. *William Bracy, Petitioner v. Richard B. Gramley, Warden*, 520 U.S. 899; 117
    S. Ct. 1793; 138 L. Ed. 2d 97 (1997)------------------------------------------------------D:420

## c. Statutes

48. 11 U.S.C. §343 ------------------------------------------------------------------------------------ 8

49. 11 U.S.C. §1302(b)(1)------------------------------------------------------------------------------ 5

50. 11 U.S.C. §1325 ---------------------------------------------------------------------------------- 12

51. 11 U.S.C. §1328 ---------------------------------------------------------------------------------- 12

52. 11 U.S.C. §324(a) --------------------------------------------------------------------------------- 7

53. 11 U.S.C. §327 ------------------------------------------------------------------------------------ 8

54. 11 U.S.C. §341 --------------------------------------------------------------------------------- 5, 6

55. 11 U.S.C. §343 ------------------------------------------------------------------------------------ 6

56. 11 U.S.C. §502(a) ------------------------------------------------------------------------------- 38

57. 11 U.S.C..§502(b) ------------------------------------------------------------------------------- 43

58. 11 U.S.C.A. Bankruptcy Rules, pg. XXVII ------------------------------------------------------ 42

59. 11 U.S.C. §704(4) & (7) ------------------------------------------------------------------------- 5

60. 11 U.S.C. Chapter 13 ---------------------------------------------------------------------------- 1

61. 18 U.S.C. §§151-159 -------------------------------------------------------------------------- 18

62. 18 U.S.C. §§1519 ------------------------------------------------------------------------------- 13

63.  18 U.S.C. §1961 et seq., ------------------------------------------------------------ 1

64.  18 U.S.C. §3057(a) --------------------------------------------------------- 5, 48, 8

65.  18 U.S.C. 3571 ------------------------------------------------------------------ 13

66.  18 U.S.C. Chapter 9 ------------------------------------------------------------- 13

67.  28 U.S.C. §1412 --------------------------------------------------------------- 45, 9

68.  28 U.S.C. §158(b) -------------------------------------------------------- 1, 47, 49

69.  28 U.S.C. §1746 -------------------------------------------------------------------- 3

70.  28 U.S.C. §2072 ----------------------------------------------------------------- 45

71.  28 U.S.C. §2075 ------------------------------------------------------------- 42, 45

72.  28 U.S.C. §453 ------------------------------------------------------------------- 22

73.  28 U.S.C. §455(a) ------------------------------------------------------------ 43, 44

74.  28 U.S.C. §586(a)(3)(C) & (F) ------------------------------------------------------ 5

75.  28 U.S.C. §586(b) ----------------------------------------------------------------- 5

76.  28 U.S.C. §753 --------------------------------------------------------------- 9, 48, 8

77.  28 U.S.C.§158 ------------------------------------------------------------------ 1, 47

78.  28 U.S.C.§453 --------------------------------------------------------------------- 28

79.  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub. L.
     No. 109-8, 119 Stat. 23 ------------------------------------------------------------- 12

80.  Pub. L. 93-593, §3, Jan. 2, 1975, 88 Stat. 1959 ------------------------------------- 42

81.  Pub.L. 91-451 §904 --------------------------------------------------------------- 47

82.  RICO, 18 U.S.C. §1961 --------------------------------------------------------- 45, 46, 47

### ii)   Statutes Cited in the Designated Items

83.  11 U.S.C. §101 ----------------------------------------D:128, 255, 261, 263, 422, 446

84.  11 U.S.C. §101(5) ------------------------------------------D:128, 255, 446, 451

85.  11 U.S.C. §101(10) ----------------------------------------D:128, 255, 446

86.  11 U.S.C. §101(15) --------------------------------------------D:255, 446

87.  11 U.S.C. §101(5)(A) ----------------------------------------------D:262

88.  11 U.S.C. §101(31)(A)(i) ------------------------------------------ D:65

89.  11 U.S.C. §105(d)(2) --------------------------------------------D:453

90.  11 U.S.C. §324(b) ---------------------------------------------- D:82

91. 11 U.S.C. §323(a) ------------------------------------------------------------------ D:83
92. 11 U.S.C. §324 -----------------------------------------------------------D:244, 246, 453
93. 11 U.S.C. §326(b) ------------------------------------------------------------- D:459
94. 11 U.S.C. §327 ---------------------------------------------D:244, 246, 305, 467, 494
95. 11 U.S.C. §330 ------------------------------------------------------------------ D:269
96. 11 U.S.C. §330(a)(6) ------------------------------------------------------- D:269
97. 11 U.S.C. §341……D:79, 99, 238, 242, 244, 299, 300, 303, 304, 305, 318, 321, 322, 359, 464
98. 11 U.S.C. §341(a) ----------------------------------------------------D:148, 299, 359
99. 11 U.S.C. §341(c) ---------------------------------------D:283, 284, 299, 303, 304, 322, 359
100. 11 U.S.C. §343 ----------------------------------------- D:99, 283, 359, 368, 465
101. 11 U.S.C. §502(b) ------------------------------------------------------------- D:451
102. 11 U.S.C. §502(b)(1) ----------------------------------------------------D:451, 452
103. 11 U.S.C. §502(c)(1) -------------------------------------------------------- D:452
104. 11 U.S.C. §521(3) -------------------------------------------------D:159, 264, 379
105. 11 U.S.C. §521(4) -------------------------------------------------D:159, 264, 379
106. 11 U.S.C. §523(a) ------------------------------------------------------------ D:129
107. 11 USC §547(b)(4)(B)----------------------------------------------------- D:449
108. 11 U.S.C. §584(d)(3) ------------------------------------------------------ D:66
109. 11 U.S.C. §704 ------------------------------------------------------------- D:465
110. 11 U.S.C. §704(4)-----------------------------D:66, 76, 88, 195, 299, 322, 364, 371, 464, 493
111. 11 U.S.C. §704(7)………D:66, 76, 88, 113, 124, 126, 141, 147, 299, 322, 364, 371, 464, 493
112. 11 U.S.C. §1302(b)(1)-------D:66, 76, 88, 113, 124, 126, 141, 147, 299, 322, 364, 371
113. 11 U.S.C. §§1302(b)(5) ------------------------------------------------------- D:66
114. 11 U.S.C. §1307(c) ------------------------------------------------------D:66,159, 264
115. 11 U.S.C. §1307(c)(1) -------------------------------------------------D:372, 448
116. 11 U.S.C. §1322(a) ------------------------------------------------------------ D:66
117. 11 U.S.C. §1322(b)(1)-(2) ---------------------------------------------------- D:65
118. 11 U.S.C. §1322(d) ------------------------------------------------------------ D:66
119. 11 U.S.C. §1324 ------------------------------------------------------------- D:63
120. 11 U.S.C. §1325(a)(3) ------------------------------D:66, 320, 322, 452, 453
121. 11 U.S.C. §1325(a)(4) ------------------------------------------------------ D:66
122. 11 U.S.C. §§1325(b)(2) ---------------------------------------------------- D:66
123. 11 U.S.C. §§1325(b)(1) -------------------------------------------------D:129

124.  11 U.S.C. §1325(a)(3) ------------------------------D:63, 83, 131, 254, 368, 373, 378

125.  11 U.S.C. §1325(b)(1)------------------------------------------------------- D:63, 457

126.  11 U.S.C. §1325(b)(1)(A)---------------------------------------------------------- D:67

127.  11 U.S.C. §1325(b)(1)(B)---------------------------------------------------------- D:67

128.  11 U.S.C. §1325(b)(2)-------------------------------------------------- D:64, 66, 67

129.  11 U.S.C. §1325(c) ----------------------------------------------------------- D:67

130.  11 U.S.C. §1326(a)(1) --------------------------------------------------------- D:66

131.  11 U.S.C. §1326(a)(2) --------------------------------------------------------- D:93

132.  11 U.S.C. §1326(b) -----------------------------------------------------------D:459

133.  11 U.S.C. §1326(b)(2) --------------------------------------------------------- D:93

134.  11 U.S.C. §1326(c) --------------------------------------------------------- D:66

135.  11 U.S.C. §1328(c) --------------------------------------------------------D:129

136.  11 U.S.C. §1328(c)(2) ------------------------------------------------------D:129

137.  11 U.S.C. §1330(a) ---------------------------------------------------------D:457

138.  18 U.S.C. §152 -----------------------------------------------------D:244, 247, 382

139.  18 U.S.C. §152(8) ---------------------------------------------------------D:493

140.  18 U.S.C. §1519------------------------------------------------------D:376, 465

141.  18 U.S.C. §3057(a) -------------------------- D:243, 244, 247, 285, 323, 382, 440, 460

142.  28 U.S.C. §157(b)(2) ---------------------------------------------------Add:735, 746

143.  28 U.S.C. §157(c)(1) ---------------------------------------------------Add:735, 746

144.  28 U.S.C. §455 -----------------------------------------------------------D:355

145.  28 U.S.C. §455(a)-------------------------------------D:356, 385, 387, 418, 419

146.  28 U.S.C. §526(a)(1) --------------------------------------------D:244, 247, 382

147.  28 U.S.C. §586(a)(3)(F)----------------------------------------------------- D:96

148.  28 U.S.C. §586(e) ---------------------------------------------------------D:458

149.  28 U.S.C. §586(e)(1)(B) ---------------------------------------------------- D:93

150.  28 U.S.C. §586(e)(2)(B)(ii)--------------------------------------------------D:459

151.  28 U.S.C. §753(b) ----------------------------------------------------D:235, 396

152.  28 U.S.C. §1334----------------------------------------------------Add:735 746

153.  28 U.S.C. §1334(e) ---------------------------------------------------------D:413

154.  28 U.S.C. §1409-----------------------------------------------------------Add:746

155.  28 U.S.C. §1412------------------------------------------D:382, 385, 422, 440, 460

156.  28 U.S.C. §1452(a) ---------------------------------------------------------D:413

## d. Other Authorities

157. Black's Law Dictionary ------------------------------------------------------------- 40

158. Black's Law Dictionary, 8th edition --------------------------------------------- 35

159. EC 7-23 ABA MCPR ------------------------------------------------------------- 28

160. EC 7-24, ABA MCPR ------------------------------------------------------------- 28, 40

161. Ethical Consideration 7-19 of the ABA Model Code of
     Responsibility------------------------------------------------------------------------- 25

162. FRCivP 83 Advisory Committee Notes, 1985 Amendment ------------------------ 45

163. Legislative Report for §343 ---------------------------------------------------------- 8

164. 11 U.S.C..§502's Historical and Statutory Notes, Revision Notes and
     Legislative Reports, 1978 Acts: --------------------------------------------------- 43

### iii) Other Authorities Cited in the Designated Items

165. NY Code of Professional Responsibility: Canons and Disciplinary Rules, DR
     7-102 ------------------------------------------------------------------------------- D:466

166. S. Rep. No. 93-419, at 5 (1973); H.R. Rep. No. 93-1453 (1974), reprinted in
     1974 U.S.C.C.A.N. 6351, 6355 ------------------------------------------------- D:419

167. Trustee Manual §2-2.1. ---------------------------------------------------------- D:93

## e. Rules

### 1) FRBkrP

168. Rule 301(b) of the former Bankruptcy Rules and Official Forms------------------- 42

169. FRBkrP------------------------------------------------------------------------------- 36

170. FRBkrP 2004(b) ---------------------------------------------------------------------- 6

171. FRBkrP 3001(f) --------------------------------------------------------------- 36, 37, 38, 42

172. FRBkrP 7026 ------------------------------------------------------------------------- 44

173. FRBkrP 8006 -------------------------------------------------------------------------- 8

174. FRBkrP 8007(b) --------------------------------------------------------------------- 8, 9

175. FRBkrP 9003 ------------------------------------------------------------------------- 17

176. FRBkrP 9011(b)(3) ------------------------------------------------------------------ 46

177.  FRBkrP 9014(d) ------------------------------------------------------------- 35
178.  FRBkrP 9014(e) ------------------------------------------------------------- 35

## 2)  FRCivP

179.  FRCivP ------------------------------------------------------------------------ 36
180.  FRCivP 26 --------------------------------------------------------------------- 44
181.  FRCivP 26-37 ----------------------------------------------------------------- 46
182.  FRCivP 43(a) ------------------------------------------------------------------ 35
183.  FRCivP 8(a)(2) --------------------------------------------------------------- 45
184.  FRCivP 8(e) -------------------------------------------------------------------- 45
185.  1995 Amendments to Rule 83 ------------------------------------------ 45, 47
186.  FRCivP 83(a)(1) -------------------------------------------------------------- 45
187.  FRCivP 84 ---------------------------------------------------------------------- 45
188.  FRCivP 9(b) -------------------------------------------------------------------- 46

## 3)  District Local Rule

189.  District Court Local Rule 5.1(h) -------------------------------------- 1, 45, 46, 47, 48

## iv)  Rules cited in the Designated Items

## (i)  FRBkrP

190.  FRBkrP 1001 ----------------------------------------------------------D:409, 422, 430
191.  FRBkrP 2002(g) ----------------------------------------------------------------- D:95
192.  FRBkrP 2003(b)(1) ------------------------------------------------------ D:79, 359
193.  FRBkrP 2004 ------------------------------------------------------------D:231, 247, 443
194.  FRBkrP 2004(a) --------------------------------------------------D:195, 244, 467, 494
195.  FRBkrP 2004(b) -------------------------------------------------------D:283, 318, 359
196.  FRBkrP 2004(c) ----------------------------------------------------------------- D:195
197.  FRBkrP 3001(a) -------------------------------------------------------D:256, 261, 446
198.  FRBkrP 3001(f) ---------------------------------------D:256, 261, 322, 373, 379, 446, 451

199. FRBkrP 4003(b)---------------------------------- D:75, 97, 98, 100, 101, 130
200. FRBkrP 5005(a)(1) ------------------------------------------------- D:238
201. FRBkrP 7004(a) -------------------------------------------------- Add:731
202. FRBkrP 7005 ----------------------------------------------------- D:365
203. FRBkrP 7026 ------------------------------------------D:287, 320, 366, 378
204. FRBkrP 7034 ----------------------------------------------------- D:407
205. FRBkrP 7037 ----------------------------------------------------- D:407
206. FRBkrP 7055 ------------------------------------------------- D:239, 380
207. FRBkrP 8001 ----------------------------------------------------- D:235
208. FRBkrP 8002 ----------------------------------------------------- D:235
209. FRBkrP 8002(c)(2) ----------------------------------------------- D:395
210. FRBkrP 8007(a) -------------------------------------------- D:235, 396
211. FRBkrP 8007(b) -------------------------------------------------- D:235
212. FRBkrP 9003(a) -------------------------------------------- D:404, 433
213. FRBkrP 9006(e) --------------------------------------------------- D:235
214. FRBkrP 9006(f) --------------------------------------------------- D:235
215. FRBkrP 9011 ----------------------------------D:126, 135, 261, 263, 269, 415
216. FRBkrP 9011(1) --------------------------------------------------- D:268
217. FRBkrP 9011(b)---------------------------------D:266, 287, 288, 320, 377, 378, 466
218. FRBkrP 9011(b)(2) -------------------------------------------- D:260, 261
219. FRBkrP 9011(b)(3) -------------------------------------------- D:260, 393
220. FRBkrP 9011(c)(1)(A) --------------------------------------------- D:258
221. FRBkrP 9011(c)(2) ------------------------------------------------ D:258
222. FRBkrP 9015(a) -------------------------------------------------- D:429
223. FRBkrP 9016 -------------------------------------------- D:195, 467, 494

## (ii)  FRCivP

224. FRCivP 1 ----------------------------------------------- D:409, 422, 430
225. FRCivP 5(e)------------------------------------------------------ D:365
226. FRCivP 4(a)----------------------------------------------------- Add:731
227. FRCivP 8(a)------------------------------------------------------ D:448
228. FRCivP 12(b)(6)---------------------------------------------- D:263, 393, 394

229. FRCivP 16------------------------------------------------------------D:393, 431, 455

230. FRCivP 16(b) --------------------------------------------------------------D:431

231. FRCivP 16(f)---------------------------------------------------------------D:409

232. FRCivP 26------------------------------------------------D:288, 321, 430, 431, 455

233. FRCivP 26(a) ---------------------------------------------------------D:409, 431

234. FRCivP 26(a)(1)(E)--------------------------------------------------------D:366

235. FRCivP 26(b)(1)-------------------------------D:287, 310, 320, 366, 378, 379

236. FRCivP 26(f)----------------------------------------D:393, 409, 430, 431, 438

237. FRCivP 34------------------------------------------------------D:287, 320, 407

238. FRCivP 34(b) --------------------------------------------------------------D:310

239. FRCivP 37-----------------------------------------------------------------D:407

240. FRCivP 37(a)(2)------------------------------------------------------------D:310

241. FRCivP 39(b) --------------------------------------------------------------D:429

242. FRCivP 45-------------------------------------------------------D:195, 467, 494

243. FRCivP 45(a)(3)------------------------------------------------------------D:195

244. FRCivP 45(a)(3)(B)---------------------------------------------------------D:195

245. FRCivP 55------------------------------- D:239, 380, 397, 399, 400, 402, 403, 429

246. FRCivP 55(c) --------------------------------------------------------------D:380

247. FRCivP 56(g) --------------------------------------------------------------D:406

248. FRCivP 60(b) --------------------------------------------------------D:380, 403


**(iii)  FREvi**

249. 1002 ----------------------------------------------------------------------D:461


**(iv)  FRAP**

250. FRAP (a)(1)(A)-------------------------------------------------------------D:417

251. FRAP 6(b)(2)(B) -----------------------------------------------------------D:417

252. FRAP 6(b)(2)(B)(i) ----------------------------------------------------D:235, 416

253. FRAP 28(a)(C) -------------------------------------------------------------D:417

Dr. Cordero's appeal of December 21, 2005, to WDNY from Judge Ninfo's decision in *DeLano*

### v) Regulations Cited in the Designated Items

254. 28 CFR §58.6 ------------------------------------------------------------- D:148, 242
255. 28 CFR §58.6(a)(10)------------------------------------------D:254, 300, 304, 322, 359, 474

## f. Treatises

256. 9 Collier on Bankruptcy § 3001.09 [2] ------------------------------------ 40
257. 9 Collier on Bankruptcy §3001.09------------------------------------------ 41
258. 9C Am. Jur 2d Bankr. §2368---------------------------------------------- 40
259. *Federal Litigation Guide, 2004 ed., by Matthew Bender & Co.* ------------------------------ 36
260. *Moore's Manual--Federal Practice and Procedure, 2004 ed.*------------------------------- 36
261. Norton Bankr. L & Prac. 2d §41:7------------------------------------------- 38
262. Norton Bankr. L & Prac. 2d §41:8 ------------------------------------------ 43

### vi) Treatises Cited in the Designated Items

263. Collier on Bankruptcy, 15 ed. rvd., vol. 9, ¶3001.09[2] ------------------------------ D:450

## 2. References in the Brief to Designated Items and the Addendum

### a. References to the DeLano Debtors' Petition for Bankruptcy

#### 1) Statement of Financial Affairs

264. D:27/Statement of Financial Affairs ----------------------------------------------------3

#### 2) Schedule A

265. D:27/Sch:A----------------------------------------------------------------------4

#### 3) Schedule B

266. D:27/Sch:B ---------------------------------------------------------------------3, 4

### 4)   Schedule F
267.  D:27/Sch.F ------------------------------------------------------------------- 2, 4, 41

### 5)   Chapter 13 Debt Repayment Plan
268.  D:27/Plam ----------------------------------------------------------------------- 12

## b.  References in the Brief to the Designated Items

269.  D:1------------------------------------------------------------------------ 2
270.  D:3------------------------------------------------------------------- passim
271.  D:5------------------------------------------------------------------- 20
272.  D:6/fn.2 ------------------------------------------------------- 14, 16, 17, 23
273.  D:8------------------------------------------------------------------ 24, 37
274.  D:8¶2 ---------------------------------------------------------------- 15
275.  D:83§A --------------------------------------------------------------- 5
276.  D:10 ----------------------------------------------------------------- 38
277.  D:11 ------------------------------------------------------------- 38, 42
278.  D:11 fn.5------------------------------------------------------- 40, 43
279.  D:11/fn. 5 ----------------------------------------------------- 40
280.  D:11/fn.5 ------------------------------------------------ 38, 40, 41
281.  D:14 ------------------------------------------------------- 35, 36, 37
282.  D:15 ----------------------------------------------------------------- 31
283.  D:16 --------------------------------------------------- 24, 26, 27, 28
284.  D:17/items (4)-(5) --------------------------------------------- 32
285.  D:20 ----------------------------------------------------------------- 2
286.  D:21 ----------------------------------------------------------------- 32
287.  D:27-60 --------------------------------------------------------------- 1
288.  D:63§§I & III -------------------------------------------------------- 5
289.  D:66§IV --------------------------------------------------------------- 5
290.  D:74 ----------------------------------------------------------------- 5
291.  D:79§§I-III ---------------------------------------------------------- 6
292.  D:90§VII ------------------------------------------------------------- 5

293. D:98§II----------------------------------------------------------------------16, 43
294. D:113¶6------------------------------------------------------------------------5
295. D:118--------------------------------------------------------------------------15
296. D:118¶1------------------------------------------------------------------------36
297. D:128§I------------------------------------------------------------------------36
298. D:137---------------------------------------------------------------------------5
299. D:139---------------------------------------------------------------------------5
300. Add:141------------------------------------------------------------------------42
301. D:141---------------------------------------------------------------------------5
302. D:142-----------------------------------------------------------------------37, 41
303. D:142-146-----------------------------------------------------------------------2
304. D:154-157-----------------------------------------------------------------------5
305. D:158---------------------------------------------------------------------------5
306. D165-188------------------------------------------------------------------------2
307. D:186-188-----------------------------------------------------------------------3
308. D:193§§I-III--------------------------------------------------------------------5
309. D:196§§IV-V--------------------------------------------------------------------2
310. D:199¶31------------------------------------------------------------------------5
311. D:205--------------------------------------------------------------------------15
312. D:207------------------------------------------------------------------------2, 16
313. D:207-210-----------------------------------------------------------------------5
314. D:208---------------------------------------------------------------------------2
315. D:211--------------------------------------------------------------------------15
316. D:214-216----------------------------------------------------------------------15
317. D:217------------------------------------------------------------------------5, 16
318. D:218-------------------------------------------------------------------2, 7, 39, 40
319. D:220-----------------------------------------------------------------------5, 15
320. D:232§§I & II------------------------------------------------------------------16
321. D:232§§I & V-------------------------------------------------------------------5
322. D:234§§II & IV------------------------------------------------------------------2
323. D:234§§II-IV-------------------------------------------------------------------23
324. D:234§II----------------------------------------------------------------------11
325. D:240§IV------------------------------------------------------------------------7

326. D:249 -------------------------------------------------------------------- 45

327. D:251§§II-IV ----------------------------------------------------------- 40

328. D:253§§V & VI -------------------------------------------------------- 2

329. D:253§V ------------------------------------------------------------------ 37

330. D:255§VI ----------------------------------------------------------------- 37

331. D:271 -------------------------------------------------------------------- 15

332. D:272 -------------------------------------------------------------------- 15

333. D:276 -------------------------------------------------------------------- 22

334. D:277/1st whereas ------------------------------------------------- 35

335. D:277/2nd¶ --------------------------------------------------------- 37

336. D:278¶¶3 & 4 ----------------------------------------------------------- 2

337. D:278¶3 ------------------------------------------------------------------ 7

338. D:279 -------------------------------------------------------------------- 35

339. D:283 -------------------------------------------------------------------- 6

340. D:287§§A & C --------------------------------------------------------- 7

341. D:296 -------------------------------------------------------------------- 6

342. D:299§II ----------------------------------------------------------------- 6

343. D:301 -------------------------------------------------------------------- 6

344. D:302 -------------------------------------------------------------------- 6

345. D:307 -------------------------------------------------------------------- 6

346. D:311 -------------------------------------------------------------------- 6

347. D:314 ----------------------------------------------------------------- 7, 15, 27

348. D:316 -------------------------------------------------------------------- 6

349. D:317 -------------------------------------------------------------------- 37

350. D:320§II --------------------------------------------------------------- 5, 27

351. D:321§III & ¶30.c ----------------------------------------------------- 6

352. D:325 ----------------------------------------------------------------- 15, 27

353. D:327 ----------------------------------------------------------------- 5, 15

354. D:327¶1 --------------------------------------------------------------- 7, 27, 37

355. D:328¶4 ------------------------------------------------------------------ 6

356. D:330 -------------------------------------------------------------------- 6

357. D:333 -------------------------------------------------------------------- 6, 7

358. D:341 -------------------------------------------------------------------- 7

359. D:342----------------------------------------------------------------- 7

360. D:355----------------------------------------------------------------- 37

361. D:358§II--------------------------------------------------------- 23, 34

362. D:361§1---------------------------------------------------------------- 15

363. D:362§2--------------------------------------------------------- 11, 16

364. D:370§C------------------------------------------------------ 5, 37, 43

365. D:372¶50-------------------------------------------------------------- 37

366. D:373§1---------------------------------------------------------------- 22

367. D:378§2--------------------------------------------------------- 22, 45

368. D:379§3---------------------------------------------------------------- 12

369. D:380¶¶72-74-------------------------------------------------------- 30

370. D:382¶2---------------------------------------------------------------- 13

371. D:385----------------------------------------------------------------- 37

372. D:392§I---------------------------------------------------------------- 44

373. D:393§1---------------------------------------------------------------- 35

374. D:404§2---------------------------------------------------------------- 17

375. D:418----------------------------------------------------------------- 44

376. D:418§II--------------------------------------------------------------- 23

377. D:426----------------------------------------------------------------- 37

378. D:430§B--------------------------------------------------------------- 18

379. D:433§D--------------------------------------------------------------- 17

380. D:441----------------------------------------------------------------- 37

381. D:444§I---------------------------------------------------------------- 35

382. D:447§A--------------------------------------------------------------- 37

383. D:450§§C-D------------------------------------------------------------ 37

384. D:453¶39-------------------------------------------------------------- 37

385. D:461------------------------------------------------------------------ 5

386. D:464/4th & 5th-------------------------------------------------------- 7

387. D:470------------------------------------------------------------------ 5

388. D:471------------------------------------------------------------------ 5

389. D:473------------------------------------------------------------------ 7

390. D:474------------------------------------------------------------------ 7

391. D:475§c----------------------------------------------------------------- 5

392. D:476----------------------------------------------------------------------------------- 7

393. D:477----------------------------------------------------------------------------------- 7

394. D:477-491 ------------------------------------------------------------------------------ 5

### c.   References in the Brief to the Addendum

395. Add:141 ------------------------------------------------------------------------------- 42

396. Add:509/fn.2 ----------------------------------------------------------- 14, 16, 17, 23

397. Add:510--------------------------------------------------------------------------------- 14

398. Add:510/fn.1 --------------------------------------------------------------------------- 14

399. Add:513--------------------------------------------------------------------------------- 14

400. Add:514--------------------------------------------------------------------------------- 14

401. Add:515--------------------------------------------------------------------------- 16, 18, 19

402. Add:516--------------------------------------------------------------------------------- 16, 18

403. Add:517--------------------------------------------------------------------------------- 16

404. Add:518--------------------------------------------------------------------------------- 20

405. Add:519--------------------------------------------------------------------------------- 21

406. Add:520--------------------------------------------------------------------------------- 21

407. Add:526--------------------------------------------------------------------------------- 21

408. Add:533/entry 10---------------------------------------------------------------------- 14

409. Add:533/entry 6 ---------------------------------------------------------------------- 26

410. Add:534/after entry 13 --------------------------------------------------------- 2, 31, 41

411. Add:535/entries 22, 75, 78, 93, 111, 157 ------------------------------------ 37

412. Add:535/entry 24---------------------------------------------------------------------- 32

413. Add:548/entry 145 ------------------------------------------------------------------- 37

414. Add:549/after entry 156 ----------------------------------------------------------- 44

415. Add:551/Canon 6---------------------------------------------------------------------- 25

416. Add:551/EC7-23 ----------------------------------------------------------------------- 28

417. Add:552----------------------------------------------------------------------------------- 40

418. Add:552/EC7-24 ----------------------------------------------------------------------- 28

419. Add:553-555 ---------------------------------------------------------------------------- 21

420. Add:557----------------------------------------------------------------------------------- 24

421. Add:557-629 ------------------------------------------------------------ 17
422. Add:591§III.A ------------------------------------------------------ 45, 48
423. Add:592§A --------------------------------------------------------------- 25
424. Add:597§B --------------------------------------------------------------- 36
425. Add:600§D --------------------------------------------------------------- 17
426. Add:602¶¶31-33 ------------------------------------------------------- 15
427. Add:609¶B --------------------------------------------------------------- 32
428. Add:613§C --------------------------------------------------------------- 45
429. Add:623§2 --------------------------------------------------------------- 14
430. Add:630 --------------------------------------------------------------- 5, 48
431. Add:633 --------------------------------------------------------------------- 46
432. Add:637 ------------------------------------------------------------------ 38, 42
433. Add:637/fn.5 ------------------------------------------------------ 40, 41, 43
434. Add:640-641 ------------------------------------------------------------- 40
435. Add:645 ------------------------------------------------------------------ 38, 40
436. Add:648 ------------------------------------------------------------------- 43
437. Add:648/fn.93 ----------------------------------------------------------- 40
438. Add:649 ------------------------------------------------------------------ 40, 41
439. Add:651 ------------------------------------------------------------------- 41
440. Add:652 ------------------------------------------------------------------- 42
441. Add:655 ------------------------------------------------------------------- 42
442. Add:654 ------------------------------------------------------------------- 41
443. Add:681 ------------------------------------------------------------------- 10
444. Add:682 --------------------------------------------------------------------- 5
445. Add:683 --------------------------------------------------------------------- 5
446. Add:685 --------------------------------------------------------------------- 5
447. Add:686-696 ------------------------------------------------------------- 10
448. Add:692 ------------------------------------------------------------- 8, 9, 15
449. Add:695 ---------------------------------------------------------------------- 8
450. Add:719 ------------------------------------------------------------------- 15
451. Add:724 ------------------------------------------------------------------- 36
452. Add:725 ------------------------------------------------------------------- 15
453. Add:729 ------------------------------------------------------------------- 15

454. Add:741 ------------------------------------------------------------------------- 15

455. Add:749 ------------------------------------------------------------------------- 15

456. Add:778 ------------------------------------------------------------------------- 32

457. Add:780 ------------------------------------------------------------------------- 14

458. Add:782 ------------------------------------------------------------------------- 14

459. Add:784 ------------------------------------------------------------------------- 14

460. Add:785 ------------------------------------------------------------------------- 41

461. Add:797§D ----------------------------------------------------------------------- 31

462. Add:809 ------------------------------------------------------------------------- 14

463. Add:816 ------------------------------------------------------------------------- 14

464. Add:831 ----------------------------------------------------------------------- 8, 15

465. Add:831-845 ------------------------------------------------------------------- 10

466. Add:836 -------------------------------------------------------------------------- 8

467. Add:839 ----------------------------------------------------------------------- 8, 15

468. Add:854§§I and IV ------------------------------------------------------------- 44

469. Add:867 -------------------------------------------------------------------------- 9

470. Add:869 -------------------------------------------------------------------------- 9

471. Add:872-875 -------------------------------------------------------------------- 4

472. Add:882§II ------------------------------------------------------------------------ 11

473. Add:885¶15 --------------------------------------------------------------------- 5, 8

474. Add:889§II ------------------------------------------------------------------------ 6

475. Add:891/fn.1 ----------------------------------------------------------------------- 3

476. Add:891/table --------------------------------------------------------------------- 25

477. Add:900§§3 & B ------------------------------------------------------------------- 5

478. Add:907 -------------------------------------------------------------------------- 8

479. Add:908§d --------------------------------------------------------------------------- 5

480. Add:911 --------------------------------------------------------------------- 9, 10, 48

481. Add:918 ------------------------------------------------------------------------- 13

482. Add:936 ------------------------------------------------------------------------- 15

483. Add:937-939 ------------------------------------------------------------------- 15

484. Add:941 ---------------------------------------------------------------------- 12, 22

485. Add:941/2nd ¶ ------------------------------------------------------------------ 15

486. Add:942 --------------------------------------------------------------------------- 4

487. Add:966§B ----------------------------------------------------------------- 8, 13

488. Add:970§C ----------------------------------------------------------------- 23

489. Add:975¶9 ------------------------------------------------------------------ 13

490. Add:979§III ---------------------------------------------------------------- 5

491. Add:980§§a & b ------------------------------------------------------------- 8

492. Add:988 -------------------------------------------------------------------- 15

493. Add:993 -------------------------------------------------------------------- 48

494. Add:1001§§III & V ---------------------------------------------------------- 9

495. Add:1001§III --------------------------------------------------------------- 8

496. Add:1019 ------------------------------------------------------------------- 15

497. Add:1020 ------------------------------------------------------------------- 9

498. Add:1022 ----------------------------------------------------------------- 8, 15

499. Add:1024-1028 -------------------------------------------------------------- 13

500. Add:1025 ------------------------------------------------------------------- 12

501. Add:1027 ------------------------------------------------------------------- 9

502. Add:1031 ----------------------------------------------------------------- 9, 13

503. Add:1034¶10-12 ------------------------------------------------------------- 9

504. Add:1051§II -------------------------------------------------------------- 5, 12

505. Add:1055§B ----------------------------------------------------------------- 15

506. Add:1058¶54 ---------------------------------------------------------------- 4

507. Add:1065 ---------------------------------------------------------------- 5, 12

508. Add:1066 ------------------------------------------------------------------- 5

509. Add:1069 ------------------------------------------------------------------- 15

510. Add:1081 ------------------------------------------------------------------- 9

511. Add:1084§II ---------------------------------------------------------------- 13

512. Add:1092 ------------------------------------------------------------------- 15

513. Add:1093 ------------------------------------------------------------------- 9

514. Add:1098§§I & II --------------------------------------------------------- 11, 23

515. Add:1098§I ------------------------------------------------------------------ 5

516. Add:1125 --------------------------------------------------------------- 5, 15, 37

517. Add:1127 ------------------------------------------------------------------- 12

518. Add:1133§§I & II ------------------------------------------------------------ 5

519. Add:1155 ----------------------------------------------------------------- 5, 15

### d. References in the Brief to the Transcript

520. Tr:2nd /letter ............................................................................ 13

521. Tr.2/9-12 ................................................................................. 41

522. Tr.3/10 .................................................................................... 25

523. Tr.3/17 et seq. ........................................................................ 19

524. Tr:4/13 .................................................................................... 17

525. Tr.5/7-19 ................................................................................. 17

526. Tr.6/25 .................................................................................... 19

527. Tr:15/17-16/15 ......................................................................... 3

528. Tr:17.14-19 .............................................................................. 3

529. Tr.28/13-29/4 .......................................................................... 33

530. Tr.49/13-50/25 ........................................................................ 33

531. Tr.52/22-53/18 ........................................................................ 25

532. Tr.53/24-54/2 .......................................................................... 27

533. Tr.54/6-55/5 ............................................................................ 32

534. Tr.64/4-67/21 .......................................................................... 39

535. Tr.64/10-66/18 ........................................................................ 32

536. Tr.60/19-61/13 ........................................................................ 33

537. Tr.75/8-76/3 ............................................................................ 33

538. Tr.95/5-17 ............................................................................... 29

539. Tr.95/18-19 ............................................................................. 29

540. Tr.96/21-23 ............................................................................. 29

541. Tr.97/13-18 ............................................................................. 29

542. Tr.97/17-98/12 ........................................................................ 34

543. Tr.99/13-20 ............................................................................. 33

544. Tr.101/10-16 ........................................................................... 29

545. Tr.101/17-19 ........................................................................... 29

546. Tr.104/5-9 ............................................................................... 30

547. Tr.105/14-17 ........................................................................... 30

548. Tr.107/1-24 ............................................................................. 25

549. Tr:109/3-5 ............................................................................... 29

550. Tr.109/19-110/8 ...................................................................... 30

551. Tr.111/6-112/3 ...................................................................................... 29

552. Tr.111/9-24 .......................................................................................... 29

553. Tr.112/4-113/17 .................................................................................... 29

554. Tr.113/2-7 ............................................................................................ 29

555. Tr.114/9-115/2 ...................................................................................... 34

556. Tr.115/4-17 .......................................................................................... 29

557. Tr.115/14-118/20 .................................................................................. 25

558. Tr.119/5-14 .......................................................................................... 25

559. Tr.120/13-16 ........................................................................................ 30

560. Tr.120/22-17 ........................................................................................ 29

561. Tr.121/18-123/11 .................................................................................. 32

562. Tr.122/16-122/11 .................................................................................... 7

563. Tr.124/4-20 .......................................................................................... 33

564. Tr.131/20-132/8 .................................................................................... 35

565. Tr.132/5-8 ....................................................................................... 27, 35

566. Tr.137/8-21 .......................................................................................... 33

567. Tr.141/8-13 ..................................................................................... 29, 31

568. Tr.141/16-19 ........................................................................................ 32

569. Tr.141/20-143/16. ................................................................................. 33

570. Tr.143/17-145/13 .................................................................................. 33

571. Tr.149/25-150/6 .................................................................................... 29

572. Tr.150/16-151/8 .................................................................................... 30

573. Tr.150/20-151/18 .................................................................................. 30

574. Tr.152/1-21 .......................................................................................... 30

575. Tr.152/3-21 .......................................................................................... 30

576. Tr.153/4-23 .......................................................................................... 30

577. Tr.154/2-24 .......................................................................................... 30

578. Tr.155/1-13 .......................................................................................... 30

579. Tr.155/14-24 ........................................................................................ 30

580. Tr.155/14-156/25 .................................................................................. 31

581. Tr.157/2-21 .......................................................................................... 32

582. Tr.157/22-158/5 .................................................................................... 30

583. Tr.160/2-23 .......................................................................................... 25

584. Tr.160/6-9 ................................................................................................ 32

585. Tr.160/24-161/5 ....................................................................................... 31

586. Tr.173/5-17 .............................................................................................. 25

587. Tr.174/5-175/8 ......................................................................................... 31

588. Tr.176/5-10 .............................................................................................. 31

589. Tr.177/18-178/9 ....................................................................................... 31

590. Tr.178/25-180/4 ....................................................................................... 25

591. Tr.180/1-21 .............................................................................................. 26

592. Tr.182/16-183/2 ....................................................................................... 28

593. Tr.182/16-183/8 ....................................................................................... 25

594. Tr.183/13-18 ............................................................................................ 28

595. Tr.183/14-18 ............................................................................................ 27

596. Tr.184/1-13 .............................................................................................. 31

597. Tr.184/2-12 .............................................................................................. 26

598. Tr.185/14-18 ............................................................................................ 26

599. Tr.186/10-187/20 ..................................................................................... 35

600. Tr.186/9-187/4 ......................................................................................... 32

601. Tr.187/5-20 .............................................................................................. 26

602. Tr.187/8 ................................................................................................... 26

603. Tr.187/21-25 ............................................................................................ 26

604. Tr.189/11-21 ............................................................................................ 22

## 3.  Headings of the Body of the Brief

B. BASIS OF APPELLATE JURISDICTION ...................................................... 1

C. ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW ............... 1

D. STATEMENT OF THE CASE ....................................................................... 1

    1. Nature of the case ................................................................................ 1

    2. Course of the Proceedings .................................................................... 1

    3. Disposition in the Court Below ............................................................. 2

    4. Statement of Facts ............................................................................... 3

Dr. Cordero's appeal of December 21, 2005, to WDNY from Judge Ninfo's decision in *DeLano*

E.  THE ARGUMENT ............................................................................................. 10

  1.  The transcript shows how judge ninfo, likely expecting it be available to dr. cordero before he would have to file his brief pursuant to an order from judge larimer manipulating its filing date, conducted a blatantly biased, arbitrary, and unlawful proceeding so that the motion to disallow his claim could be granted as needed by them, the delanos, and the trustees to eliminate dr. cordero before he could expose a bankruptcy fraud scheme ............................................................................................. 10

      a.  Judge Ninfo confronted Dr. Cordero at the evidentiary hearing with a lawyers directory stating that a Richard Cordero worked as an asso-ciate at a law firm specializing in litigation; Dr. Cordero stated under oath that he was not that person and had never practiced law; but the Judge assumed that he had lied and, without obtaining more evidence, in his decision on appeal portrayed him as a liar and a perjurer so as to destroy his credibility, whereby the Judge manifested his bias against and libeled Dr. Cordero, who proves here that he told the truth ............................................................................................. 13

      b.  Judge Ninfo shows his bias by inconsistently criticizing Dr. Cordero for acting as "a typical pro se" litigant lacking legal representation and for being "an experienced attorney" who was able to confuse Mr. DeLano ............................................................................................. 24

      c.  Judge Ninfo misleads his appellate peers by pretending that Dr. Cordero abused his "experience" to "confuse" Mr. DeLano at the evidentiary hearing while the Judge withholds the fact that Mr. DeLano was accompanied by Att. Werner, who 'has been in this business" for 28 years and has appeared before him in more than 525 cases ............................................................................................. 25

      d.  Judge Ninfo shows his bias toward Mr. DeLano by dismissing as "confused" and withholding from his appellate peers Mr. DeLano's "most interesting statements", which he made against legal interest and which support Dr. Cordero's claim against him, whereby the Judge misleads his peers with an unbalanced, incomplete account of the evidentiary hearing ............................................................................................. 25

      e.  Neither Mr. DeLano nor Att. Werner bothered to read the complaint or the proof of claim containing the claim that they had moved to disallow and in the middle of the hearing asked Dr. Cordero to lend them a copy! ............................................................................................. 32

      f.  Judge Ninfo looked on in complicit silence while Atts. Werner and Beyma signaled answers to Mr. DeLano during his examination under oath ............................................................................................. 33

      g.  Judge Ninfo misleads his peers by pretending that there was a "Trial", yet what he ordered and held was just an evidentiary hearing ............................................................................................. 34

h.  Judge Ninfo shows blatant bias and bad faith in criticizing Dr.
Cordero for not filing a "Pretrial Memorandum of Law", a type
of paper not even mentioned in the rules, never required of him,
and not filed by Att. Werner, who also filed no memorandum of
law to support his motion to disallow .................................................. 36

i.  Judge Ninfo pretends to provide legal authority, without discussing
it, for his decision, which on the contrary shows that with disregard
for the law he disallowed the claim........................................................ 37

j.  Judge Ninfo has shown such bias against Dr. Cordero and in favor
of the local parties as to require the nullification of his decisions
and his disqualification under 28 U.S.C. §455(a), which the
Supreme Court has stated calls only for the appearance, not the
reality, of bias and prejudice ................................................................ 43

2.  Local Rule 5.1(h) suspiciously singles out RICO claims by requiring
exceedingly detailed facts just to file them, thus violating notice
pleading under FRCivP.......................................................................... 45

3.  Section 158 of title 28 U.S.C. provides for bankruptcy appellate review
by judges of unequal degree of impartiality in violation of the equal
protection requirements of the Due Process Clause of the Fifth
Amendment of the Constitution and is unconstitutional ............................... 47

F.  CONCLUSION AND RELIEF SOUGHT................................................................ 50

Proposed Order ........................................................................................ 51

## B. Basis of Appellate Jurisdiction

1. This appeal is filed under 28 U.S.C.§158.

## C. Issues Presented and Standard of Appellate Review

2. The issues presented herein are all legal and thus, should be reviewed de novo, *In re Bell*, 225 F.3d 203, 209 (2d Cir. 2000).

   a.  Whether the judge's bias and disregard for the law, the rules, and the facts so infect the proceedings that due process of law was denied and his orders were unlawful;

   b.  Whether the DeLanos' motion to disallow Dr. Cordero's claim was an artifice to prevent him from proving their fraud and was granted to protect a bankruptcy fraud scheme;

   c.  Whether District Court Local Rule 5.1(h) on asserting a claim under RICO, 18 U.S.C. §1961 et seq., is void as inconsistent with notice pleading and the enabling provisions of FRCivP;

   d.  Whether 28 U.S.C. §158(b) allowing judges, circuits, and parties to choose whether to establish or resort to bankruptcy appellate panels impairs due process, provides for forum shopping, and denies equal protection so that it is unconstitutional.

## D. Statement of the Case

### 1. Nature of the case

3. This is an appeal from the disallowance by U.S. Bankruptcy Judge John C. Ninfo, II, WBNY, of a creditor's claim in the voluntary bankruptcy case filed jointly by Mr. David and Mrs. Mary Ann DeLano (the DeLanos) under 11 U.S.C. Chapter 13 (hereinafter *DeLano*; references to §# are to Title 11 unless the context requires otherwise).

### 2. Course of the Proceedings

4. The DeLanos filed their bankruptcy petition on January 27, 2004 (*In re David DeLano and Mary Ann DeLano*, docket no. 04-20280; Designated Items in the Record, pages 27-60=D:27-60). They listed 21 creditors, 19 as unsecured in Schedule F, where they included Dr. Richard

Cordero (references to Schedules (Sch:) and other petition parts are to D:27/...; here D:27/Sch:F). He filed his proof of claim on May 19, 2004 (D:142-146). Up to then they had treated, and for months thereafter continued to treat, him as a creditor. On July 9, 2004, he filed a statement showing on the basis of even the few documents that they had produced at his instigation (D165-188) that they had committed bankruptcy fraud, particularly concealment of assets, and requesting the documents that they had failed to produce (D:196§§IV-V; 207, 208) Only then did they come up with the idea of a motion to disallow his claim as a means to get rid of him before he could prove their fraud. Filed on July 22 (D:218), it was heard on August 25. After manipulating the request for documents (D:234§§II & IV) and disregarding the motion's defects of untimeliness, laches, and bad faith (D:253§§V & VI) and the presumption of validity in favor of the claim (D:256§VII), Judge Ninfo ordered that Dr. Cordero take discovery of Mr. DeLano until December 15, 2004, in the case that gave rise to his claim, namely, *Pfuntner v. Gordon et al.*, docket no. 02-2230, WBNY (*Pfuntner;* Addendum to the Designated Items, page 534/after entry 13, infra=Add:534/after entry 13), and that the parties introduce their evidence at an evidentiary hearing (D:278¶¶3 & 4).

5. It was held on March 1, 2005, when Judge Ninfo abandoned his duty impartially to take in evidence and behaved as Chief Advocate for Mr. DeLano while the latter was the only witness examined and Dr. Cordero the only one to introduce evidence. Although Mr. DeLano made consistent admissions against self-interest, the Judge arbitrarily disregarded them in order to reach at the hearing the predetermined decision of disallowance. His written decision of April 4 (D:3) was followed by this appeal on April 11, 2005 (D:1).

### 3. Disposition in the Court Below

6. Judge Ninfo held that Dr. Cordero had not proved his claim in *Pfuntner* against Mr. DeLano and had no standing to further participate in *DeLano*; and restated his denial to stay his decision. (D:20)

Dr. Cordero's appeal of December 21, 2005, to WDNY from Judge Ninfo's decision in *DeLano*

### 4. Statement of Facts

7. Mr. David DeLano is not an average debtor: He has worked in financing for 7 years and at two banks as an officer for 32 years: 39 years managing money!...and counting, for he is still working for a large bank, namely, Manufacturers & Traders Trust Bank (M&T), as a manager in credit administration (Transcript page 15, line 17 to page 16, line 15=Tr:15/17-16/15). As such, he qualifies as an expert in how to assess creditworthiness and remain solvent to be able to repay bank loans. What is more, Mr. DeLano works precisely in the area of bankruptcies, collecting money from delinquent commercial borrowers and even liquidating their companies (Tr:17.14-19). Actually, he was in charge of the defaulted loan to Premier Van Lines, a storage company that filed for bankruptcy, *In re Premier Van Lines*, dkt. 01-20692 (*Premier*), and gave rise to *Pfuntner* (Add:891/fn.1); both cases were brought before Judge Ninfo. Thus, Mr. DeLano is a member of a class of people who should know better than to go bankrupt and that, because of their experience with borrowers that use or abuse the bankruptcy system, know bankruptcy officers and how to petition them rightfully or wrongfully but successfully for bankruptcy relief.

8. For her part, Mrs. Mary Ann DeLano was a specialist in business Xerox machines, and as such a person trained to think methodically so as to ask pointed questions of customers and guide them through a series of systematic steps to solve their technical problems with Xerox machines.

9. Hence, the DeLanos are professionals with expertise in borrowing, dealing with bankruptcies, and learning and applying technical instructions. They must be held to a high standard of responsibility. Their bankruptcy petition warranted close scrutiny, particularly since it makes no sense that:

   a. they earned $291,470 in just the 2001-2003 fiscal years (D:27/Statement of Financial Affairs and D:186-188);

   b. but they declared having only $535 in cash or in bank accounts (D:27/Sch:B); yet, they and

their attorney, Christopher Werner, Esq., know they can afford to pay $18,005 in legal fees for over a year's maneuvering to avoid producing the documents requested by Dr. Cordero to find the whereabouts of their $291,470 (Add:872-875; 942), not to mention other funds;

c.  indeed, they spread over 18 credit cards a whopping debt of $98,092 (D:27/Sch:F), although the average credit card debt of Americans is $6,000;

d.  despite all that borrowing, they declared household goods worth only $2,910 (D:27/Sch:B…that's all they pretend to have accumulated throughout their combined worklives!, although they earned over a *100* times that amount, $291,470, in only the three years of 2001-03…unbelievable!;

e.  moreover, they strung mortgages since 1975 to pay for the same home in which they still live:

| Mortgage referred to in the incomplete documents produced by the DeLanos to Trustee Reiber | Exhibit page # | Amounts of the mortgages |
|---|---|---|
| 1) took out a mortgage for $26,000 in 1975; | D:342 | $26,000 |
| 2) another for $7,467 in 1977; | D:343 | 7,467 |
| 3) still another for $59,000 in 1988; as well as | D:346 | 59,000 |
| 4) an overdraft from ONONDAGA Bank for $59,000 and | D:346 | 59,000 |
| 5) owed $59,000 to M&T in 1988; | D:176 | 59,000 |
| 6) another mortgage for $29,800 in 1990; | D:348 | 29,800 |
| 7) even another one for $46,920 in 1993; and | D:349 | 46,920 |
| 8) yet another for $95,000 in 1999. | D:350-54 | 95,000 |
| | Total | $382,187.00 |

10. Yet today, 30 years later, they still owe $77,084 and have equity of merely $21,415 (D:27/Sch:A…*Mindboggling!* (Add:1058¶54)

11. Although the DeLanos have received over $670,000, as shown by even the few documents that they have reluctantly produced at Dr. Cordero's instigation, the officers that have a statutory duty to investigate evidence of bankruptcy fraud or report it for investigation have not only

disregarded such duty, but have also refused even to require them to produce any statements of

their bank and debit card accounts, which can show the flow of their receipts and payments.

| | Officer's name & title | Statutory duty to investigate | Request for documents | Response...if any |
|---|---|---|---|---|
| 1. | George Reiber, Standing Chpt. 13 Trustee | 11 U.S.C. §§1302(b)(1) and 704(4) & (7) | D:66§IV<br>D:113¶6<br><br>D:492, cf. D:477-491<br>Add:683 | D:74, cf. D:83§A<br>D:120, cf. D:124 and 193§§I-III<br>none<br>none |
| 2. | Kathleen Dunivin Schmitt, Assistant U.S. Trustee | 28 U.S.C. §586(a)(3)(C) & (F) | D:63§§I & III<br>D:470, cf. D:461<br>D:471<br>D:475§c<br>Add:685 | D:70, cf. D:84§IV<br>none<br>none<br>none<br>none |
| 3. | Deirdre A. Martini, U.S. Trustee for Region 2 | 28 U.S.C. §586(b) | D:104, cf. D:90§VII;<br>D:137;<br><br>Add:682 | none<br>D:139 , cf. D:141;<br>D:154-157, cf. D:158;<br>none |
| 4. | Bkr. Judge John C. Ninfo, II | 11 U.S.C. §1325 and 18 U.S.C. §3057(a) (Add:630) | D:198§V and D:199¶31; 207-210, 217;<br>D:320§II<br>D:370§C<br>Add:1051§II<br><br>Add:1133§§I & II | D:220, cf. D:232§§I & V<br><br>D:327<br>D:3<br>Add:1065, cf. Add:1066; 1094<br>Add:1125 |
| 5. | District Judge David G. Larimer | 18 U.S.C. §3057(a) (Add:630) | Add:885¶15,  900§§3 & B, Add:908§d, 951, 979§III<br>Add:1098§I | Add:1021<br>Add:1155 |

12. What has motivated them to protect the DeLanos by sparing them production of incriminating

documents? (D:458§V) This question is particularly appropriate because all of them have been

informed of the incident at the beginning of case that not only to a reasonable person, but all the

more so to one charged with the duty to prevent bankruptcy fraud, would have shown that the

DeLanos had committed fraud and needed protection from exposure: The meeting of the DeLa-

no's creditors, held pursuant to §341 on March 8, 2004, was attended only by Dr. Cordero. Yet,

Trustee Reiber's attorney, James W. Weidman, Esq., unjustifiably asked Dr. Cordero whether and,

if so, how much he knew about the DeLanos' having committed fraud, and when Dr. Cordero would not reveal what he knew, Mr. Weidman, with the Trustee's approval, rather than let the DeLanos be examined under oath, as §343 requires, while officially being recorded on tape, put an end to the meeting after Dr. Cordero had asked only two questions! (D:79§§I-III; Add:889§II)

13. Far from any of those officers investigating this cover up, they attempted or condoned the subsequent attempt to limit Dr. Cordero's examination of the DeLanos at an adjourned meeting of creditors to one hour (D:70), which they knew to be unlawful since §341 provides for a series of meetings for the very broad scope of examination set forth under FRBkrP 2004(b) (D:283). Upon realizing how broadly Dr. Cordero would examine the DeLanos, the officers attempted or condoned the attempt to prevent the examination by not holding the §341 meeting at all! (D:296), 299§II) They also tried to put it off until after the evidentiary hearing (¶4 above), when Dr. Cordero's claim would be disallowed and he would be stripped of standing to even call for a meeting. (D:301, 302) They were acting in coordination to evade their duty!

14. An appeal to Trustee Martini was never replied to (D:307). On the contrary, Trustee Reiber reiterated his decision not to hold the meeting. (D:311, 316) Dr. Cordero analyzed the law in a motion for Judge Ninfo to declare that he had not prohibited and could not prohibit its holding. (D:321§III & ¶30.c) The Judge denied it while displaying again his unwillingness and inability to argue the law. (D:328¶4) Another appeal to Trustee Martini went by without response. (D:330)

15. Eventually Trustee Reiber agreed to hold a §341 meeting, but gave no explanation for his reversal in his letter to Dr. Cordero of December 30, 2004 (D:333). However, on December 15, Judge Ninfo had set the date for the evidentiary hearing of the DeLanos' motion to disallow Dr. Cordero's claim (¶4 above) for March 1, 2005 (D:332). Now such meeting came in handy.

16. Indeed, the Judge had gone along with that motion without regard for the analysis by Dr. Cordero showing that it was an artifice to get rid of him and his requests for documents that

could prove the DeLanos' fraud. (D:240§IV, 253§V). The Judge required him to take discovery of Mr. DeLano in the case that had given rise to the claim (D:272/2'''¶, 278¶3), which he wrongly identified as Att. Werner had done in his cursory motion as "Adversary Proceeding in Premier Van Lines (01-20692)" (D:218) Had either read Dr. Cordero's proof of claim (D:144), they could have realized that the claim against Mr. DeLano arose in *Pfuntner v. Trustee Gordon et al.*, no. 02-2230, not in *Premier*. They had decided to eliminate him regardless of his proof, which even by the time of the evidentiary hearing they neither had read nor had a copy of! (¶73 below)

17. To facilitate disallowance, both the DeLanos (D:314) and Judge Ninfo (D:327¶1) unlawfully denied *every single document* that Dr. Cordero requested (D:287§§A & C). However, he did not take discovery of any other *Pfuntner* party. So 'they had no clue what he could possibly do at the evidentiary hearing' (Tr:122/16-122/11). Hence, to find out in advance, the so-called meeting of creditors was set for and held on February 1, 2005. It was not intended for Dr. Cordero to examine the DeLanos, but rather for them to depose him! The facts prove it.

18. That is why Trustee Reiber allowed Att. Werner to micromanage the meeting. (D:464/4''' & 5'''¶¶) He allowed him to refuse to produce documents; even those few that the Trustee got the Attorney to agree to produce, he allowed him to produce them late, only after Dr. Cordero had reminded the Trustee that they were past due (D:341). Even then Att. Werner attempted to avoid production (D:473 & 477); produced incomplete documents (D:342); or only because of Dr. Cordero's insistence, produced objectively useless documents (D:477-491) until the Trustee just stopped answering Dr. Cordero's requests (D:492) and then the Judge disallowed the claim.

19. As for Trustee Schmitt, she attempted to avoid producing copies of the tapes of the February 1 meeting of creditors despite Dr. Cordero's request (D:474), sending instead tapes of a different meeting (D:476). Likewise, although Trustee Reiber wrote that "At the request of Dr. Cordero, I will have court reporter [sic] available as well as having a tape recording made of the meeting" (D:333),

when Dr. Cordero requested him a copy, Trustee Reiber denied it and told him to buy it from the

reporter, preposterously alleging that the latter owns the copyright to it. But what the reporter

produced is work for hire and Dr. Cordero was the reason why the Trustee hired a reporter.

20. That meeting of creditors was never intended to function as stated in the 1978 Legislative Report

for §343: "The purpose of the examination is to enable creditors and the trustee to determine if assets

have improperly been disposed of or concealed or if there are grounds for objection to discharge".

Rather, it was an opportunity for the DeLanos and the trustees to pump information out of Dr.

Cordero. It was another abuse of process, a coordinated charade! (Add:966§B)

21. Judge Larimer supported that charade by protecting Trustees Schmitt and Reiber from having to

produce any tapes or transcripts of those meetings of creditors on March 8, 2004, and February

1, 2005. To that end, he dispatched Dr. Cordero's requests that he order their production

(Add:885¶15, 907, 980§§a & b), if only "for the proper determination of this appeal", let alone

"appellant's right of appeal" (Add:951 1001§III), with a lazy and conclusory "These motions are

wholly without merit and they are denied in their entirety" (Add:1022).

22. What is more, Judge Larimer also repeatedly maneuvered to deprive Dr. Cordero of the

transcript of the evidentiary hearing on March 1, 2005, where his colleague, Judge Ninfo,

disallowed his claim in *DeLano*: He manipulated orders scheduling Dr. Cordero to file his

appellant's brief by a date by which the Judge knew the transcript would not be ready for Dr.

Cordero to use it in writing his brief or make it part of the record. The Judge did so although he

still had no jurisdiction to issue orders in the case because the record consisted then only of Dr.

Cordero's notice of appeal and designation of items so that it was incomplete under FRBkrP

8006 and 8007(b), and consequently, its transfer from Judge Ninfo's court to him had been

unlawful. (Add:692, cf. 695; 831, cf. 836; 839).

23. When the orders manipulating brief-filing dates failed due to Dr. Cordero's objections to keep

the transcript from him, it was for Bankruptcy Court Reporter Mary Dianetti to refuse to agree to certify that her transcript of her own stenographic recording of the evidentiary hearing would be complete, accurate, and free from tampering influence (Add:867, 869). Although Dr. Cordero complained about the unreliability resulting from such refusal and requested that Reporter Dianetti be referred for investigation to the Judicial Conference of the United States under 28 U.S.C. §753 (Add:911), Judge Larimer just disregarded Dr. Cordero's factual and legal analysis and issued another lazy "The motion is in all respects denied" (Add:991).

24. Dr. Cordero pointed out in a motion for reconsideration how suspicious it was that although Reporter Dianetti could lose her job if referred to the Conference, particularly since this was the second time that she and Judge Larimer had tried to prevent him from obtaining a transcript, which they did in *Pfuntner* (Add:1011§A), she was so sure that the Judge would not refer her that she did not even bother to file an objection to the motion (Add:1001§§III & V, cf. 1034¶¶10-12). Again with no discussion of Dr. Cordero's factual and legal arguments, the Judge simply forced him to request the transcript from Reporter Dianetti and pay for it lest his appeal be dismissed. (Add:1020, cf. 1025, 1027)

25. Even after Dr. Cordero complied (Add:1031) and the transcript was prepared and filed by Reporter Dianetti and transmitted "forthwith" from the Bankruptcy Court to the District Court, the latter failed to file it as required under FRBkrP 8007(b), thus making it necessary for Dr. Cordero to move the Court to comply with its duty to docket it, enter the appeal, and schedule the appellant's brief (Add:1081). Judge Larimer rescheduled the filing date by his order of November 21, where he wrote that "It now appears that the record on appeal is complete, and no further action pursuant to Fed.R.Bankr.P. 8007 is required" (Add:1093). Thereby he unwittingly admitted that the record was incomplete when he issued his order of April 22 (Add:692) -7 *months earlier!* at a time when there was not even an arrangement for the Reporter to begin

preparing her transcript, let alone file it (Add:681, cf. 686-696, 831-845)- requiring Dr. Cordero to file his appellant's brief by May 12. Judge Larimer had willfully violated FRBkrP 8007 to deprive Dr. Cordero of the transcript.

26. By not referring Reporter Dianetti to the Judicial Conference, Judge Larimer was protecting not only her, but also himself from review that would have revealed the quality of their work: In her transcript everybody appears speaking Pidgin English, babbling in broken sentences, uttering barbarisms, and sputtering so much solecistic fragments in each line that to recompose them into the whole of a meaningful statement is a toil. As a result, the participants at the hearing, though professionals, come across in the transcript as a bunch of speech impaired illiterates. Her transcript can hardly be representative of the standard of competency to which the Conference holds reporters. Therefore, if the Conference had reviewed such an objectively inferior reproduction of a court proceeding as Reporter Dianetti's transcript is, it would have called into question why nevertheless Judges Larimer and Ninfo customarily, and thus knowingly, accept work of such disturbing quality as the record on which they determine the rights, property claims, and maybe even the liberty of litigants...or do they pay no attention to any transcript?, for their own orders show that they rarely cite and never analyze the law or the rules, and never discuss the motions on which they rule, which points to their not even reading them. (¶36.a below)

## E. The Argument

**‾.⸴ transcript shows how Judge Ninfo, likely expecting it not to be available to Dr. Cordero before he would have to file his brief pursuant to an order from Judge Larimer manipulating its filing date, conducted a blatantly biased, arbitrary, and unlawful proceeding so that the motion to disallow his claim could be granted as needed by them, the DeLanos, and the trustees to eliminate Dr. Cordero before he could expose a bankruptcy fraud scheme**

27. If Reporter Dianetti had been referred to the Judicial Conference as requested (Add:911), the

latter would have learned that she works for judges that: **1)** overlook the overwhelming defects of such a transcript, compounded by the misalignment of *every* page of its PDF version and the resulting discrepancy of the page numbers of that and the paper version; **2)** accept Trustee Reiber's shockingly unprofessional and perfunctory "Report" (¶36.d below); **3)** find it unobjectionable that a lawyer should come to the evidentiary hearing of his motion to disallow a creditor's claim without having even read the claim or brought a copy of it (¶73 below); **4)** allow lawyers to suborn perjury by signaling and mouthing answers to their client on the stand (¶76 below); **5)** are satisfied with lawyers' cursory, back-of-napkin like statements with no discussion of the law or facts or the opposing party's arguments (¶36.c below), because they are so closely patterned after **6)** the judges' own conclusory, fiat-like orders devoid of legal reasoning (¶36.a & b below). From these facts, the Conference would have inferred the judges' anything-goes mentality, tolerant of others' substandard performance and permissive in carrying out their own duties, that naturally leans to self-indulgent disregard for the law, the rules, and the facts while showing contemptuous indifference to legal, material, and emotional injury caused to litigants. Hence, by refusing to refer Reporter Dianetti to the Conference for her refusal to agree to certify that her transcript would not be incomplete, inaccurate, and tampered with, Judge Larimer was protecting himself as much as her and other officers and staff who work in that small federal building so propitious for the formation of a clique and who are willing to go along with what he feels like doing rather than comply with the requirements of their official positions. (¶22 above).

28. Such mentality and clique are evidenced by a consistent common pattern of conduct. So Judge Larimer joined Colleague Judge Ninfo (D:234§II, 362§2; Add:1098§§I & II), and the trustees (Add:882§II, 1041§I), in their refusal to request documentary evidence from the DeLanos. Undeniably, if any or all of those officers had obtained from the DeLanos documents as obviously pertinent to the proper disposition of any bankruptcy petition as the statements of the

debtors' bank accounts and debit card accounts, they would be in a far better position to determine whether the DeLanos filed a good or bad faith bankruptcy petition, for those documents could have led them to the whereabouts of the DeLanos' known inflow but unaccounted for sum of over two thirds of a million dollars! (¶11 above) Likewise, those documents would have allowed them to acquit themselves of their duty to find the facts in order to rely on them in determining the validity of a creditor's and a litigant's contention, namely, that the DeLanos raised in bad faith their motion to disallow the claim of Dr. Cordero as an artifice both to eliminate him before he could prove their bankruptcy fraud and to strip him of standing so that he could not oppose the confirmation of their plan under §1325 (Add:27/Plan, 941, cf. 1051§II, 1065, 1066, 1094, 1127, 1025) and later on the discharge of their debts under §1328. What is more, those officers could have used such documents to fulfill their broader responsibility to detect and report bankruptcy fraud in order to safeguard the integrity of the bankruptcy system and of judicial process. So why have they repeatedly engaged in a mutually reinforcing denial of documents that obstructs the performance of their duties and of justice?

29. The facts point to the answer: Mr. DeLano has been an insider of the financing and banking industries for 39 years and currently deals with precisely the bankruptcies of clients of M&T Bank, his employer. Thereby he has become familiar with the actors of the bankruptcy system. For instance, he is involved in three bankruptcy cases presided over by Judge Ninfo, handled by standing trustees and their supervisors, and affecting Dr. Cordero, to wit, *Premier*, *Pfuntner*, and *DeLano*. During his career, he has learned it all about systemic abuse of bankruptcy laws and procedure by debtors and officers (cf. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23). As a result, he cannot be allowed to be dirtied by criminal charges when he comes in calling on the system's debt removal cleaners to help him polish up his retirement golden pot. (D:379§3) If his own fraud were exposed and it led him and his

wife to face a prison term of 20 years and over $500,000 in fines under, among others, 18 U.S.C. Chapter 9, and §§1519 and 3571, he could consider it in his and his wife's self-interest to enter into a plea bargain in which for exchange of immunity he would disclose all the incriminating knowledge that he has about those officers and others even higher than them. He would create a situation described by an old technical legal term, namely, *"All hell would break loose!"*, known today as the exposure of a bankruptcy fraud scheme. (Add:600§D)

30. This explains why, in general, those officers engaged in a series of non-coincidental, intentional, and coordinated acts of disregard of the law, the rules, and the facts in order to keep exposure-threatening documents from Dr. Cordero (Add:966§B) and would neither refer Reporter Dianetti to the Judicial Conference nor abide by their duty to report the DeLanos' fraud to the Attorney General (D:382¶2; Add:975¶9).

31. It also explains why, in particular, Judge Larimer repeatedly manipulated brief-scheduling orders so as to keep from Dr. Cordero the transcript (Add:1031) since the Judge had opportunity to review and realize how damaging its contents were: Reporter Dianetti received Dr. Cordero's request for the transcript on November 2 and on November 4 she filed it, almost 200 pages (Tr:2ᵘ /letter), although she took *more than 2½ months* to prepare the 27 pages of the first transcript (Add:918) Despite not only Dr. Cordero's request that she be referred to the Judicial Conference and the latter appoint another reporter, but also his refusal to pay her (Add:1024-1028), she had to prepare it for review! Let's examine the evidence that they tried to suppress. (Add:1084§II)

   **a. Judge Ninfo confronted Dr. Cordero at the evidentiary hearing with a lawyers directory stating that a Richard Cordero worked as an associate at a law firm specializing in litigation; Dr. Cordero stated under oath that he was not that person and had never practiced law; but the Judge assumed that he had lied and, without obtaining more evidence, in his decision on appeal portrayed him as a liar and a perjurer so as to destroy his credibility, whereby the Judge manifested his bias against and libeled Dr. Cordero, who proves here that he told the truth**

32. Judge Ninfo alleged in his decision (D:6/fn.2 & Add:509/fn.2) that:

> [2] Although Cordero asserted that he advised the Court that he was an attorney in one of his initial appearances in the Premier Case, neither the Court nor any of the courtroom staff recalls such an admission.

33. The facts belie Judge Ninfo's allegation: Dr. Cordero gave notice on more than 30 occasions (Add:510) to Judge Ninfo and the parties that he was a lawyer, beginning with the very first letter that he ever wrote to him, dated September 27, 2002 (Add:513), of which the Judge acknowledged receipt on October 8, 2002 (Add:514). Dr. Cordero's notice registered not only with the staff, who identified him as "Esq." (Add:533/entry 10), but also the parties acknowledged that piece of information and even shared it with the Judge in their letters to him and filings. (Add:510/fn.1; see samples at Add:780, 782, 784, 809, 816)

34. How many times does Judge Ninfo need to get notice of something before his brain registers it? If that question appears to ridicule the Judge, the alternatives are far more damaging, for they impugn his competency and integrity: Did he read any part of Dr. Cordero's documents other than the Requested Relief, which he would instinctively deny? Did he read anything with the minimal degree of due care that, on the one hand, would have enabled him to perceive Dr. Cordero's legal knowledge and reasoning evinced by his documents and, on the other hand, is required of a lawyer and all the more so of a judge whose decisions affect directly the lives and property of other people? Or did he read them, notice that Dr. Cordero was a lawyer, but now denies that fact in order to pretend to his appellate peers that Dr. Cordero hid his professional identity and is untrustworthy? Let's examine the facts to determine who is unprofessional and untrustworthy.

35. To begin with, an appearance pro se is not reserved for the legal illiterate. Rather, it is mostly a function of whether a person can afford a lawyer (Add:623§2). This is particularly well illustrated in this case, where it would have cost Dr. Cordero hundreds of thousands of dollars to

hire a lawyer to search for his property since January 2002 and from New York City hundreds of miles away, where he resides; to defend against Plaintiff Pfuntner and bring counterclaims, cross-claims, third-party claims, and default applications, against 7 parties; communicating by letter and on the phone with those parties, trustees, a host of public officers, and other people; appeal from the Bankruptcy Court, to the District Court, to the Court of Appeals, to the Supreme Court; and in addition defend a claim in *DeLano*. Therefore, it was faulty reasoning for Judge Ninfo to assume that if Dr. Cordero was appearing pro se, he could not be a lawyer.

36. More significantly, it revealed grave deficiency in observation and deduction for Judge Ninfo to receive all those documents that he complains about having received from Dr. Cordero for years (D:8¶2) and still not be able to notice even obvious differences: Dr. Cordero's documents cite the law and rules, discuss their meaning, and apply them to the facts to produce a coherent and structured argument resulting from legal reasoning. The Judge could have contrasted them with:

   a. his own decisions (D:3; 220, 272, 327, 332; Add:719, 725, 729, 731, 741, 749, 1094, 1125;

   b. those of his Colleague Judge Larimer (Add:692, 831, 839, 991, 1019, 1021, 1092, 1155;

   c. the statements of Att. Werner, a truly experienced bankruptcy attorney (¶61 below; D:118, 205, 211 & 214-216, 271, 314, 325; Add:936, 988, 1069); or

   d. the shockingly unprofessional and perfunctory scraps of papers that *über*-experienced Trustee Reiber (Add:891/Tbl.) submitted to Judge Ninfo (Add:937-939, cf. 1041§I) and that he accepted as "the Trustee's Report" (Add:941/2"" ¶, cf. 1055§B, 1022, 1094).

37. Those written things show contemptuous disregard for the law and the rules by not citing them or not discussing them at all. Their lack of legal foundation shows that Lord Ninfo, enfeoffed by Lord Larimer, has carved the Fiefdom of Rochester out of the land of the law of Congress (Add:602¶¶31-33) in order to apply the law of personal relationships (D:361§1) and issue fiats on no other authority than 'I order this because I can'. No wonder he could not notice something

as irrelevant for his "local practice" (D:98§II, 362§2) as Dr. Cordero's legal and factual analyses. Hence, what does it show for Judge Ninfo not to be able to draw from those analyses that Dr. Cordero had a lawyer's command of the law, or not to notice the repeated identification of Dr. Cordero as a lawyer provided by himself and others, and instead for the Judge to need hearsay from a clerk for the possibility to dawn upon him that Dr. Cordero was a lawyer?

38. Indeed, Judge Ninfo states that "Cordero had a discussion with a Deputy Clerk about obtaining a CM/ECF password during which he indicated that he was an attorney". (D:6/fn.2; Add:509/fn.2) That was a conversation with Deputy Clerk of Court Todd Stickle on August 6, 2004, about how to insure that Dr. Cordero's documents were transmitted to the clerks for docketing rather than withheld from them by Judge Ninfo (D:232§§I & II). Mr. Stickle said that he remembered that Dr. Cordero had a degree from La Sorbonne and asked him whether he was a lawyer. Dr. Cordero said that he was and was admitted to the Second Department. Mr. Stickle said that if Dr. Cordero obtained authorization from a U.S. Bankruptcy Court in NY City to file electronically there, the court in Rochester would recognize such authorization; otherwise, he would have to take in Rochester the three hour-long e-filing course. While inquiring about the non-docketed documents that Dr. Cordero had faxed to Judge Ninfo, Mr. Stickle may have told the Judge and his assistants about that conversation and reminded them that Dr. Cordero was a lawyer. On August 9, Mr. Stickle informed Dr. Cordero of the allegation that his fax had not been received (D:207, 217).

39. However, Judge Ninfo's "attached New York State Attorney Directory Westlaw Search (the "Search")" bears the dates "2/28/2005" (Add:516 & 517) and "2/23/2005"(Add:515). Two inferences can be drawn from this considerable time lag. One is that on or about August 9 he was reminded that Dr. Cordero is a lawyer and since then, contrary to his pretense, 'has seen in that light' (cf. D:6/fn.2 & Add:509/fn.2) Dr. Cordero's documents and conduct and dealt accordingly with him at all hearings and when writing his *DeLano* decisions. If so, why did the Judge take more than

six and a half months from this reminder on August 9 until the end of February 2005 to stumble upon the astonishingly novel idea, which others carry into action reflexively, of doing that "Search" to find out whom he was dealing with?

40. The second inference can provide the answer. It is supported by the fact that at the evidentiary hearing on March 1, 2005, and precisely while asking to confirmation or deny his "Search" findings, the Judge criticized Dr. Cordero because "your petition to several - to the United States Supreme Court, although it may be somewhat carefully crafted I think, many times already almost purposely misleading with respect to your status as a pro se litigant" (Tr:4/13; cf. Tr.5/7-19) (cf. "makes much of his *pro se* litigant status", D:6/fn.2, Add:509/fn.2). The Judge was referring to a brief that he had no reason, of course, to know about, to wit, Dr. Cordero' petition of January 20, 2005, to the Supreme Court for a writ of certiorari to the Court of Appeals for the Second Circuit (*Richard Cordero v. Kenneth W. Gordon, Trustee, et al.*, dkt. 04-8371, SCt.; Add:557-629). Because of the references therein to *DeLano* (Add:600§D), Dr. Cordero served it also on Att. Werner and Trustee Reiber, but certainly not on Judge Ninfo. These facts allow the inference that in preparation for the March 1 evidentiary hearing, the Judge had an ex parte communication in violation of FRBkrP 9003 with one of those served during which he received and reviewed a copy of that petition and, finding it in his backhand complimentary term "somewhat carefully crafted", was intrigued by who Dr. Cordero was and thus, conducted the "Search" to find out.[1] This explains why, even though the Judge made clear at the March 1 evidentiary hearing that he would disallow Dr. Cordero's claim, he did not write his decision until April 4, after the Supreme Court denied the petition on March 28...just in case the Court granted it, which would

---

[1] It remains to be determined to what extent Judge Ninfo betrayed other ex parte communications when in his August 30 order he wrote: "...the Court...notes that the Office of the United States Trustee, which Cordero has been in frequent contact with..." (D:274). See also the accounts of the ex parte communication between Att. MacKnight, Mr. Pfuntner's attorney, and Judge Ninfo (D:404§2; 433§D).

have induced him to rethink his decision and whether to issue it at all, for then his appellate peers would be of no help. If so, the Judge is using the statement that Dr. Cordero is a lawyer made by Mr. Stickle eight months earlier as a cover up for the ex parte communication that triggered the Judge's "Search" and led to his effort to portray Dr. Cordero as a liar and a perjurer.

41. Judge Ninfo's failure to read Dr. Cordero's documents or deduct therefrom that he must be a lawyer impugns his competency. His assumption that because Dr. Cordero was a pro se litigant he could not be a lawyer explains why he has disregarded the law, the rules, and facts in dealing with him and trampled on his rights (D:430§B): The Judge expected him not to be able to defend them and to resign himself to accepting such abuse, that is, if he even understood it as such. The Judge's assumption and his acting on them impugn his sense of fairness and judicial integrity.

42. What he next failed to do indicts him: Judge Ninfo looked up the NY State Attorney Directory (Add:515) and saw a Richard Cordero registered; looked up WestLaw (Add:516) and found a Richard Cordero listed as an associate of a law firm; and that was enough for him to jump to the conclusion that they had to be the same person. The elemental idea that in NY City with its 8.5 million people two persons can have the same name never popped up in his mind. The idea that one could have stolen the identity of another at a time when the FBI has stated that identity theft is the fastest growing crime in the United States never crossed the mind of a judge that is bound by law, e.g. §1325(a)(3) and 18 U.S.C. §§151-159, to on a daily basis examine bankruptcy petitioners for fraud. What a mind!

43. There is no intention to mock Judge Ninfo in that exclamation; there is only a set of facts that elicit it. Had he had the intellectual capacity to entertain those ideas, then he had the professional duty to take another step before ever thinking of asserting two pieces of data found online as true and correct and to the detriment of a person: He had to verify them! That was incredibly simple to do: pick up the phone and call the numbers listed on the WestLaw webpage and confirm with

that Richard Cordero the reported data about him, and if confirmed, ask him not only questions whose answers appeared in the public record of *Pfuntner* and *DeLano*, but also those that could be answered only by Dr. Cordero, who had already appeared before Judge Ninfo on the phone 11 times and in person twice. This cannot be too much to expect of a judge who is supposed to have a mind keen enough to spot fraud by persons who, very much unlike Dr. Cordero, do have a motive to lie, cheat, and hide their identity, namely, the powerful financial motive of concealing assets and evading their debts. (cf. ¶9 above)

44. Actually, one does not even have to expect Judge Ninfo to tax his mind at all to come up with that idea. He only had to read the one single page of the NYS Attorney Directory that he had downloaded (Add:515). By so doing, he would have found that it stated thus:

> ⁻⁻ʸᵘ need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800.

45. And he did need additional information. He needed it to prove whether the name Richard Cordero appearing on those webpages referred to the same Dr. Richard Cordero that had appeared before him and written so much in the last three years. Had he done so, Judge Ninfo would readily have obtained information from a disinterested official third party that would have alerted him to the fact that something was wrong and required further inquiry.

46. But Judge Ninfo did not do so, not even for the sake of his own professional image. Instead, he thought that he would use the raw data found on the Internet to ambush Dr. Cordero at the evidentiary hearing of the DeLanos' motion to disallow his claim. On that occasion, he asked Dr. Cordero whether he was a registered and licensed attorney (Tr.3/17 et seq.) and Dr. Cordero stated that he was; and the Judge asked whether he was an associate of the NYC law firm of Heller, Jacobs & Kamlet, and Dr. Cordero answered not only no, but also that he had never worked for any law firm and had never been a practicing lawyer (Tr.6/25).

47. Oh! how heady Judge Ninfo must have felt with his treasure trove of Internet data and its denial

by Dr. Cordero! The Judge had got him!, for Dr. Cordero's denial had to be false because...
because...never mind any reason. Judge Ninfo just knew that it was false if coming from Dr.
Cordero. How else to explain Dr. Cordero's performance as 'an experienced litigator' for hours
at that evidentiary hearing that lasted from 1:30 to 7:00 p.m.? The Judge could not think for
himself of any other explanation than that suggested by data on a webpage, namely, that Dr.
Cordero could only have honed those skills by practicing at "a firm that the Search described as
having ninety-eight percent (98%) of its practice devoted to litigation" (D:5; Add:509) So Dr. Cordero
must have lied! This was the Judge's opportunity to disparage his character. And he snatched it!

48. Judge Ninfo proved unwilling and unable to ask himself, let alone find out, what conceivable
motive Dr. Cordero could possibly have had to lie under oath and on the record...or as an impar-
tial and cautious professional would have put it, motive for him to make statements in apparent
conflict with easily accessible public data. Instead of using the more than a month between the
evidentiary hearing on March 1 and his opinion on April 4, 2005, to check Dr. Cordero's
statement, Judge Ninfo simply sat on his hands or jump on his feet for joy at the expectation of
publicly, in a decision posted on the homepage, the very first page, of the court's site on the
World Wide Web, www.nywb.uscourts.gov, portraying Dr. Cordero as a liar and a perjurer.

49. By contrast, a prudent person, one capable of performing with due diligence, would have as a
matter of course considered that once Dr. Cordero confirmed the data on the NYS Attorney
Registration website but denied the additional information on WestLaw, it was necessary to
entertain the possibility that his assertion under oath might be true and that some data might be
wrong. Such person would have phoned "the Attorney Registration Unit at 212-428-2800", and
spoken with Mr. Samuel H. Younger, the Chief Management Analyst (Add:518), who would
have indicated that Dr. Cordero was in fact registered and licensed in 1989; is the only attorney
registered with the name of Richard Cordero, but has been retired from the practice of law since

1993! What is more, none of his nine registration statements indicates that he ever practiced law at, or was associated with, any law firm whatsoever!

50. Now the intellectually curious and unbiased person would have been intrigued. Having no agenda other than to get the facts straight, he would have opened his mind wider: He would have called the number listed by WestLaw for Heller, Jacobs & Kamlet, that is, (212)682-7000, only to find out that a recording stated that it was not in service and no further information was available. This would have piqued his curiosity and led him to do a Google search on that law firm with "(98%) of its practice devoted to litigation" where, as the Judge put it by jumping to a conclusion, Dr. Cordero had become 'an experienced litigator'. He would have found where that firm was: in bankruptcy!, filed by Geron & Associates, P.C., in NYC, tel. (212)682-7575, in the U.S. Bankruptcy Court, SDNY, docket no. 04-13127, Judge Burton R. Lifland presiding (Add:520).

51. A thorough person, not to mention a conscientious judge determined to exercise his judicial power responsibly, would have called that law firm to ask for the contact information of the former partners. Dr. Cordero did so and obtained affidavits from Mr. Kamlet (Add:526), who now works at the same firm as Mr. Jacobs, as well as from Mr. Heller (Add:519). They stated that the Richard Cordero that worked at their former law firm was a paralegal and was not represented by their firm as being a lawyer, was not Dr. Richard Cordero and was older than him, and that the firm of Heller, Jacobs & Kamlet ceased doing business at the end of 2003. What is more, acting with due diligence, Dr. Cordero contacted Martindale-Hubbell and FindLaw to determine how his name came to be associated with that law firm. Their replies show that it happened through an internal mistake or an indeterminate event, respectively. (Add:553-555)

52. This proves that a competent person could take common sense steps to determine whether two similar but not identical names identified the same or different individuals. A responsible and prudent person would have done so before presenting somebody to others as a liar and a perjurer.

A judge, duty-bound to be impartial and fair to everybody, 28 U.S.C. §453, had an obligation to take such steps before so disparaging anybody in a court decision, an official public document.

53. Judge Ninfo proved not to be that person and failed his duty. Yet, he managed to make it through law school, work for JAG, become a partner at Underberg & Kessler, the firm defending Mr. DeLano and M&T Bank from Dr. Cordero's claims in *Pfuntner*, and was appointed a bankruptcy judge in 1992. That leads one to assume his familiarity with the standards of the legal profession and respect for the oath of office. However, just before the evidentiary hearing on March 1, 2005, he allowed himself access to material not made available to him, but made available to Mr. Werner, the attorney that by then had appeared before him in over 525 cases (¶61 below) and who is defending Mr. DeLano from Dr. Cordero's charges of bankruptcy fraud and his documentary requests. Days before the hearing, the Judge looked up information about Dr. Cordero as a lawyer that he had not looked up in the years since Dr. Cordero first wrote to him on September 27, 2002. Although ever since Dr. Cordero has demonstrated to be cautious in his statements and deliberate in his conduct, at and after the hearing Judge Ninfo arbitrarily dismissed his statements under oath that he had never practiced as a lawyer or worked at a law firm and instead confirmed his prejudgment that 'the DeLanos are honest but unfortunate debtors who filed their petition in good faith' (D:276, Add:941; cf. D:378§2) while disregarding the evidence before him that they were currently engaged in fraud (D:373§1) as well as depriving himself so as to keep from Dr. Cordero every document that could prove the fraud that they had already committed (Tr:189/11-21).

54. This shows that Judge Ninfo was immune to duty and prudence, that he was predisposed against Dr. Cordero and toward Mr. DeLano, and seized on a statement explicitly denied and easily corroborated as wrong as a means to buttress the outcome of the evidentiary hearing that he had prejudged. The attitude motivating such conduct is bias. The consequence of such conduct is to raise a damning indictment against Judge Ninfo's professional competency and trustworthiness.

55. Judge Ninfo's bias led him to make defamatory statements not only negligently, but also with reckless disregard for their truth or falsity. (cf. Add:970§C) Bias is a defect of character incompatible with the office of judgeship, which requires fairness and impartiality in the administration of justice. (D:418§II) His bias becomes all the more real when put in the context of the series of his acts of disregard for the law, the rules, and the facts over the last three years consistently to the detriment of non-local Dr. Cordero and the benefit of the local parties. (D:234§§II-IV; 358§II; 392§I) Bias against non-locals, whether from another state or city, is so real that to combat it diversity jurisdiction was created. His bias requires his disqualification, especially since it is motivated by ill-will toward Dr. Cordero and an agenda not covered by any privilege because outside the scope, and contrary to the duty, of his office, to wit, to protect the locals from being exposed as participants in a bankruptcy fraud scheme (¶¶28-31 above, D:458§V).

56. Pending Judge Ninfo's disqualification (¶106 below), his appellate peers should be aware that the bias and substandard research and analysis that so grossly manifest themselves at the beginning of his decision on appeal also ooze from the rest of it (¶88 below). Such defects are substantive and sufficient to require the nullification of this and his other decisions, for they cast a shadow of distrust on all of them. This follows perversely from his own conclusion (D:6/fn.2 & Add:509/fn.2) that:

> Many of the pleadings, statements, actions and inactions of Cordero in and in connection with the Premier and DeLano Cases, in which he makes much of his *pro se* litigant status, can be seen in a far different light when one is aware that he is a licensed, experienced, and registered attorney.

57. Now that the facts are known, the logic that Judge Ninfo expressed there requires that 'Dr. Cordero's pleadings, statements, actions and inactions be seen not "in a far different light", but rather in the light that Dr. Cordero cast on them: as the product of a non-practicing lawyer who appears pro se because he cannot afford the huge cost of legal representation and who will not stand to be abused as a non-local party (Add:1098§§I & II)by a biased judge supporting a

bankruptcy fraud scheme.

### b. Judge Ninfo shows his bias by inconsistently criticizing Dr. Cordero for acting as "a typical pro se" litigant lacking legal representation and for being "an experienced attorney" who was able to confuse Mr. DeLano

58. The bias infecting his decision causes blemishing inconsistencies. So Judge Ninfo states that:

> Although, as an experienced attorney, Cordero was successful in cor... DeLano during his testimony and in eliciting from DeLano some most interesting statements as the result of that confusion. and even though DeLano insisted that he was not confused, what is clear from the Trial and DeLano's testimony at the Trial is that: (1) DeLano consistently asserted that: (a) in his interaction with Cordero, he was at all times acting within the scope of his employment as an officer and employee of M&T Bank; and (b) Cordero had no claim against him individually; and (2) there was nothing in DeLano's testimony at the Trial that demonstrated that Cordero had any valid claim or cause of action against him individually for negligence, recklessness or otherwise. (D:16)

59. So Judge Ninfo says in the same breath that because Dr. Cordero is pro se he does not know better than to file "a great number of...typical pro se procedural and tangential motions" (D:8) but because he is "an experienced attorney" he knows how to confuse a witness on the stand (D:16); and even says that Dr. Cordero gained that experience working at a firm "having ninety-eight percent (98%) of its practice devoted to litigation" (D:6), yet criticizes him as a "litigious pro se litigant [who is not] fully analyzing the merits of the request and the actual decision of the Court" (D:8) although at the March 1 evidentiary hearing the Judge remarked that Dr. Cordero had written an impresssively fine brief to the Supreme Court (¶40 above; Add:557). If you would rather appear pro se than let a lawyer of Judge Ninfo's performance level represent you, would you trust his capacity to dispose of people's rights in a way consistent with the laws, the rules, and the facts?

60. The fact is that Dr. Cordero's examination of Mr. DeLano was the first examination of a witness on the stand that Dr. Cordero conducted *in his whole life*. Judge Ninfo would have realized that had he performed with due diligence like a competent and unbiased lawyer, not to mention a judge, and run a search in WestLaw for all the cases in which Dr. Cordero had appeared as the attorney of record. Since the Judge claimed that Dr. Cordero is 'an experienced litigator', he

should have been able to find a long list of cases litigated by Dr. Cordero and in which he gained

his experience "to confuse" a witness. But he would have found none.

**c. Judge Ninfo misleads his appellate peers by pretending that Dr. Cordero abused his "experience" to "confuse" Mr. DeLano at the evidentiary hearing while the Judge withholds the fact that Mr. DeLano was accompanied by Att. Werner, who 'has been in this business" for 28 years and has appeared before him in more than 525 cases**

61. Just as Judge Ninfo misleadingly referred to the March 1 evidentiary hearing as a "Trial" (but see

D:332), he misleadingly omitted in his whole decision to say that Mr. DeLano appeared, not

alone, but rather represented by a seasoned attorney, namely, Att. Christopher Werner (Tr.3/10),

a truly experienced attorney who at the hearing on July 19, 2004, volunteered the statement that

'he has been in this business for 28 years'. For its part, PACER shows that as of February 28,

2005, he had appeared before Judge Ninfo in 525 cases! (Add:891/table; cf. Add:592§A)

62. It would be untenable for Judge Ninfo, after having allowed Att. Werner to appear before him in

hundreds of cases, to pretend that the Attorney was all of a sudden incompetent to defend Mr.

DeLano from being "confused" by Dr. Cordero...the one who for the first time ever was

examining a witness on the stand. Nevertheless, if he deemed Mr. DeLano to be represented by

incompetent counsel (Add:551/Canon 6), his duty was either to report Att. Werner to the bar for

reassessment of his membership in it or to give Mr. DeLano an opportunity to find competent

counsel, but he could certainly not do what he did: Judge Ninfo became Chief Advocate On the

Bench for Mr. DeLano, as shown by the transcript (Tr.52/22-53/18, 107/1-24, 115/14-118/20,

119/5-14, 160/2-23, 173/5-17, 178/25-180/4, 182/16-183/8), the one that Judge Larimer

repeatedly tried to suppress to protect his Colleague (¶22 above). Thereby Judge Ninfo

disregarded his duty "to come to the hearing with an open and neutral mind and to render impartial

judgment" (Ethical Consideration 7-19 of the ABA Model Code of Professional Responsibility).

**d. Judge Ninfo shows his bias toward Mr. DeLano by dismissing as**

"confused" **and withholding from his appellate peers Mr. DeLano's** "most interesting statements", **which he made against legal interest and which support Dr. Cordero's claim against him, whereby the Judge misleads his peers with an unbalanced, incomplete account of the evidentiary hearing**

63. Judge Ninfo lacks any good faith basis to portray Mr. DeLano, as a person easily "confused"...especially by what has turned out to be a non-practicing, first-time examiner, Dr. Cordero. A financing and banking officer for 39 years, Mr. DeLano was at the time of the events in 2002, an Assistant Vice-President at M&T Bank (Add:533/entry 6) and when *Pfuntner* comes to trial, he will be M&T's representative (Tr.184/2-12; ¶70.m below).

64. Hence, Mr. DeLano is an expert in banking and was testifying about his own actions in that field. Actually, Judge Ninfo concluded from his testimony that "he was at all times acting within the scope of his employment as an officer and employee of M&T Bank" (D:16; ¶58 above). Nevertheless, the Judge is so biased that he dismissed Expert DeLano's "most interesting statements", (id.) as "confused" without even considering the possibility that they may constitute admissions against legal interest by a witness who took his oath to tell the whole truth seriously. Thus the Judge, relinquishing his role as a neutral arbiter, tried as Chief Advocate on the Bench to contain the damaging admissions of his client, Mr. DeLano, by impeaching the latter's capacity to understand and respond to questions about his own actions in his field of expertise. However, the Judge was unable to state at the hearing, while there was an opportunity for clarification, what he thought Mr. DeLano was "confused" about. (Tr.187/5-20) Meantime, Att. Werner was Deferential Lower Chair, for who needs to speak when his boss the judge is doing so for their client (Tr.180/1-21)?...except to flatly contradict him: At the end of the hearing that lasted hours (Tr.185/14-18), Judge Ninfo asked Att. Werner whether he had any questions for Mr. DeLano and this is Att. Werner's assessment of Mr. DeLano's testimony:

Tr.187/  8. THE COURT: I'm just waiting for you. Are

```
 9  you finished now?
21  DR. CORDERO: Very well. I have come
22  THE COURT: Mr. Werner?
23  MR. WERNER: I believe Mr. DeLano has given
24  a fair statement of his position and facts, your Honor,
25  I have no questions.
```

65. Judge Ninfo pretends to know that "what is clear from the Trial and DeLano's testimony at the Trial is that: (1) DeLano consistently asserted that:..." (D:16) because the Judge is clear-minded and was not confused...but Judge Ninfo admitted that he himself was confused! (Tr.53/24-54/2; ¶67 below) And he still is, for how can he state that "DeLano consistently asserted" anything while pretending that Mr. DeLano was "confused" although the hallmark of being confused is precisely the incapacity to make consistent statements, the state of mind of one who contradicts himself and is incoherent? Is Judge Ninfo saying that Mr. DeLano made some inconsistent statements but also other consistent statements? Then Mr. DeLano was not so "confused" after all! (Tr.183/14-18) His state of mind allowed him to make "some most interesting statements" against his own legal interest. So the one who turns out again to be incapable of making consistent statements in a single sentence is Judge Ninfo. (¶59 above) Do you really want to risk your career and more by supporting this peer?

66. Judge Ninfo is not straightforward either with his appellate peers, for he alleges that "what is clear from the Trial and DeLano's testimony at the Trial...", thereby pretending that he has two sources for "what is clear". However, there was no "Trial" at all; just an evidentiary hearing. (Tr.132/5-8) In addition, at that hearing there was nothing other than Mr. DeLano's testimony because in pursuit of his agenda to eliminate Dr. Cordero from the case through a two-punch setup, the Judge denied him *every single document* that he had requested. (D:287, 314, 320§II, 325, 327¶1)

67. Nor is Judge Ninfo straightforward when he denies his peers an impartial and complete statement of facts by omitting Mr. DeLano's "most interesting statements" (D:16; ¶58 above). How can

a judge who admitted at the hearing that he was confused by Dr. Cordero's questions so as to offer Mr. DeLano a cue for him to recant his statements against legal interest (Tr.182/16-183/2), which instead resulted in that "DeLano insisted that he was not confused" (D:16, Tr.183/13-18), keep from his peers those "most interesting statements" that would have given them the opportunity to decide for themselves who was "confused" after all?

68. Judge Ninfo took an oath to 'administer justice fairly and impartially' (28 U.S.C.§453). When he writes a decision, he cannot become the partisan advocate of his own views in order to ensure that his decision is not reversed on appeal. He remains a lawyer and a member of the legal community, bound by the same standard of professional responsibility as any lawyer, for his observance of that standard is intended to achieve the same objective in his relation to any appellate court, that is, "to bring about just and informed decisions" (Add:552/EC7-24; EC 7-24 ABA MCPR).

69. Hence, a judge must present all the facts, whether favorable or unfavorable to his decision, and then argue their relative weight. That duty is patterned after the professional responsibility standard requiring that a lawyer present to the court "legal authority in the controlling jurisdiction directly adverse to the position of his client" (Add:551/EC7-23; ABA MCPR). This is in line with every witness' duty not just to tell the truth, but also "the whole truth" as opposed to only the part supporting his position. As for a judge, his duty to present all the facts, not only those supporting his decision, is equally compelling because while the appellate court can on its own find controlling legal authority that is adverse to the lower judge's decision, it may have no way of finding the facts other than those stated by the lower judge and may give them more credence than to the parties' statements of facts. Justice is as disserved when either the appellate court or the lower judge administers it on the basis of a partial and partisan, self-serving view of the facts. Judge Ninfo rendered such a disservice by withholding from his appellate peers Mr. DeLano's "most interesting statements".

70. Those "statements" bear on Mr. DeLano's handling of the containers storing Dr. Cordero's proper-

ty. They are "most interesting" precisely because they establish his claim against Mr. DeLano:

a) David Palmer was the owner of Premier Van Lines, the moving and storage company that

with a loan from M&T Bank bought containers where to store the property of Premier's

clients, including Dr. Cordero, and warehoused them at a Jefferson-Henrietta warehouse;

Premier went bankrupt and Mr. DeLano was in charge of liquidating the containers

(Tr.101/10-16, 113/2-7);

b) Mr. DeLano told Dr. Cordero that he had seen the containers bearing his name and holding

his property, but later on admitted that he had seen none (Tr.149/25-150/6, 101/17-19,

109/3-5, 111/9-24, 141/8-13);

c) Mr. DeLano was under pressure to have the containers moved out of the Jefferson-Henrietta

warehouse because the latter was going to put a warehouse lien on the containers to secure

unpaid warehousing fees (Tr.111/6-112/3), an action that would have delayed the sale and

diminished Mr. DeLano's net recovery from liquidating M&T Bank's security interest in

the containers;

d) So Mr. DeLano hired an auctioneer, John Reynolds (Tr.97/13-18), to sell the containers; and

the auctioneer sold them in a private auction to the single warehouser that he contacted

(Tr.115/4-17, 95/5-17, 96/21-23);

e) Mr. DeLano did not check and did not know whether the auctioneer checked the capacity of

the buying warehouser, whose name he did not remember, to store property safely from

damage or loss due to pests, water, humidity, extreme temperature, fire, and theft (Tr.95/18-

19, 112/4-113/17, 120/22-17);

f) Mr. DeLano did not contact the owners of the property stored in those containers to inform

them of how he intended to dispose of the containers and find out from them how they

wanted their property handled, such as by having it inspected before being removed, moving it to a place of their choice, or obtaining in advance from the prospective buying ware-houser a statement of its terms and conditions, including storage fees (Tr.109/19-110/8);

g) Although Mr. DeLano did not think that Dr. Cordero's property was in any of the con-tainers sold at the auction (Tr.105/14-17, 120/13-16), after the sale, Mr. DeLano directed him to the buying warehouser to deal directly with it about his property (Tr:152/1-21);

h) Dr. Cordero contacted the buying warehouser and its owner told him that Mr. DeLano had sent him an acknowledgment of receipt that included Dr. Cordero's name, but the owner would not sign it because he had not received any containers bearing Dr. Cordero's name among those sold to him by the auctioneer (Tr.104/5-9, 150/16-151/8, 150/20-151/18);

i) Mr. DeLano admitted that he had sent the owner of the buying warehouse such acknowledgment of receipt but that the owner turned out to be right because the containers with Dr. Cordero's property were not delivered to him given that they had *never* been in the Jefferson-Henrietta warehouse; Mr. DeLano explained that this may have happened because while checking the slips in the business records that Premier had in its office in the Jefferson-Henrietta warehouse, he may have seen a slip with Dr. Cordero's name and erroneously concluded that the containers that the slip referred to were also in that warehouse; (Tr.152/3-21, 153/4-23, 155/1-13);

j) but in fact Premier's owner, Mr. Palmer, had abandoned Dr. Cordero's containers at Mr. Pfuntner's warehouse in Avon and it was Dr. Cordero who had to invest his time and effort to find that out (Tr.154/2-24, 155/14-24, 157/22-158/5), and to travel there to inspect the containers and found his property in part lost or damaged (D:380¶¶72-74);

k) Mr. DeLano admitted that his mistakes could have caused Dr. Cordero confusion and anxiety and cost him a lot of effort, time, and money trying to find out where his property

could be, and that it was reasonable for Dr. Cordero to claim therefor compensation from him and M&T Bank and for them to compensate him to a degree. (Tr.155/14-156/25, 160/24-161/5, 174/5-175/8, 176/5-10);

l) Upon Mr. DeLano making that frank admission, Dr. Cordero said that such degree of compensation was what had to be determined at the *Pfuntner* trial where all the parties and all the issues could be tried as a whole, as opposed to trying to determine only the claim against Mr. DeLano in isolation in his bankruptcy case. (Tr.177/18-178/9);

m) Mr. DeLano also admitted that since he was the loan officer who handled the defaulted loan to Mr. Palmer and Premier and disposed of the containers in which Dr. Cordero's property was stored, he would be the one to represent M&T at the *Pfuntner* trial and bring any documents. (Tr.184/1-13)

71. No wonder Mr. DeLano's are "most interesting statements" given that they constitute an admission of his having dealt with the containers with the aim only of avoiding a warehousing lien, thus maximizing the liquidation of his Bank's interest in them, and with disregard for the property of other people, such as Dr. Cordero, that they contained. In so doing, Mr. DeLano proceeded negligently, recklessly, or fraudulently, which had direct, adverse consequences on Dr. Cordero, for which Mr. DeLano and M&T could be found liable to him at the *Pfuntner* trial. Likewise, his "statements" are also "most interesting" precisely because they corroborate Dr. Cordero's claims contained in his complaint served on M&T and Mr. DeLano on November 21, 2002 (Add:534/after entry 13, 797§D) concerning their mishandling of his stored property.

72. Moreover, Mr. DeLano admitted that "he had seen one or more storage containers at the [Jefferson-Henrietta] Warehouse which bore Cordero's name" (D:15; Tr.141/8-13). That admission can now be relied upon by Mr. Pfuntner and other parties at the *Pfuntner* trial to escape liability for Dr. Cordero's property not found at Mr. Pfuntner's warehouse during the inspection on May 19,

2003. Judge Ninfo himself required Dr. Cordero to undertake it and accepted his report at the hearing on May 21 on the loss of, or damage to, his property (D:398¶¶35, 50; Add:609¶B; Tr.141/16-19). They can rely on the Judge's **findings** that such containers could have been at the Jefferson-Henrietta warehouse (D:17/items (4)-(5); Tr.160/6-9) to argue that Mr. DeLano is liable for any conversion of those containers while he negligently or recklessly sold them through his agent, Reynolds Auction Co., to the buying warehouse. (Tr.186/9-187/4) Only incapacity to anticipate a legal argument, bias, and his need to protect Mr. DeLano can cause Judge Ninfo to negate that "there is any possibility" (D:21) that Mr. DeLano could be found liable to Dr. Cordero and grant his motion to disallow. Thus, if Mr. DeLano's admission was not sufficient for Dr. Cordero to prove by a preponderance of the evidence the validity of his claim against Mr. DeLano, what would?

### e. Neither Mr. DeLano nor Att. Werner bothered to read the complaint or the proof of claim containing the claim that they had moved to disallow and in the middle of the hearing asked Dr. Cordero to lend them a copy!

73. In addition, Mr. DeLano's are "most interesting statements" because he admitted at the evidentiary hearing to not having read fully or at all the documents containing the very claim that he was moving to disallow. (Tr.54/6-55/5) Neither he nor Att. Werner brought a copy of either Dr. Cordero's complaint or proof of claim to the hearing (Tr.64/10-66/18). Judge Ninfo himself did not know key parties in the handling of the storage containers that held Dr. Cordero's property. (Tr.54/6-55/5, 121/18-123/11, 157/2-21)

74. So intensely did they feel the need under Dr. Cordero's questioning to find out right away what that claim was all about that during the first recess Mr. DeLano and Att. Werner walked out of the courtroom with Michael Beyma, Esq., attorney for both M&T Bank and Mr. DeLano in *Pfuntner* (Add:535/entry 24, Add:778). When Att. Werner and Mr. DeLano came back in, the former asked Court Attendant Larraine Parkhurst whether she had a copy of Dr. Cordero's

complaint against Mr. DeLano! He was told that it had been filed with the court. So he turned

around and asked Dr. Cordero whether he had a copy. He said that he had copies and Att. Werner

asked him for one! Dr. Cordero declined to lend him any. (Tr.49/13-50/25)

75. When Judge Ninfo came in and the hearing was back on the record, Dr. Cordero related the

incident. The Judge found nothing objectionable in such irrefutable proof that neither Att. Wer-

ner nor Mr. DeLano had had before or had then any idea of the nature of the claim that they had

moved to disallow. (Tr.124/4-20, 137/8-21, 143/17-145/13) This showed that their motion was

raised in bad faith as a process-abusive subterfuge to eliminate Dr. Cordero from the case before

he could prove the DeLanos' fraud. (Tr.60/19-61/13) Nor did the Judge find reprehensible that

during an examination under oath, Att. Werner had attempted to take advantage of a recess to

feed Mr. DeLano answers to key questions put to him by Dr. Cordero. The latter moved to

dismiss. The Judge denied his motion out of hand although he had to acknowledge that they

neither had a copy of Dr. Cordero's complaint nor knew its contents. (Tr.99/13-20)...but the

lawyers had their hands and mouths to impermissibly signal answers to their testifying client.

### f. Judge Ninfo looked on in complicit silence while Atts. Werner and Beyma signaled answers to Mr. DeLano during his examination under oath

76. At the evidentiary hearing, Dr. Cordero remained at his table. Relative to him, Mr. DeLano was

on the witness stand to his right and in front of him; Att. Werner, at his table five feet away to his

right; and in the first bench behind the bar and Att. Werner, some nine feet away, Att. Beyma, a

partner at Underberg & Kessler, where Judge Ninfo too was a partner when he was appointed

judge in 1992. On several occasions, Dr. Cordero saw Mr. DeLano suddenly look away from him

and toward his attorneys and as Dr. Cordero looked at them he caught one or the other signaling to

Mr. DeLano with the arm! (Tr.28/13-29/4:Beyma, 75/8-76/3:Beyma, 141/20-143/16:Werner)

77. Dr. Cordero protested such utterly censurable conduct to Judge Ninfo. He was sitting some 25

feet in front and between Att. Werner and Dr. Cordero and some 30 feet from Att. Beyma. Yet, Judge Ninfo found nothing more implausible to say than that he had his eyes fixed on Dr. Cordero and had not seen anything. Indeed, from the distance and higher level of his bench he had an unobstructed view of the two attorneys and Dr. Cordero, who were in his central field of vision. So it was impossible for him not to catch the distraction of either of them flailing his arm. Nevertheless, his allegation was belied even more patently by what he did not say: He did not ask either of the attorneys on any of those occasions whether they had signaled an answer to Mr. DeLano. Even if, assuming arguendo, he had not seen them signaling, he did not care to find out either. Yet, he had every reason to ask about it precisely because neither protested Dr. Cordero's accusation, which they reflexively and indignantly would have done had it not been true that they had signaled to Mr. DeLano how to answer.

78. Judge Ninfo's toleration of conduct intended to suborn perjury shows his blatant disregard for due process. His disingenuous denials that he had not seen the reprehensible signaling that occurred three times right before his eyes cast an insidious meaning on his emphatic admonition to Mr. DeLano that 'you are not listening to Dr. Cordero's questions and you have to "think about the answer". (Tr.97/17-98/12, 114/9-115/2). Given his tolerance of subornation of perjury in open court by well-known locals (D:358§II), what else would he let them do behind close doors? One cannot imagine that those attorneys would have dare signal to their client on the witness stand had they been before a judge unknown to them at the court in Albany, NDNY. But one can understand their conduct in the context of a pattern of non-coincidental, intention, and coordinated wrongdoing in support of a bankruptcy fraud scheme. (392§I)

### g. Judge Ninfo misleads his peers by pretending that there was a "Trial", yet what he ordered and held was just an evidentiary hearing

79. Judge Ninfo misleadingly refers to a "Trial" although it was an evidentiary hearing what he ordered **1)** at the hearing on August 25, 2004, of Mr. DeLano's motion to disallow Dr. Cordero's claim; **2)**

Dr. Cordero's appeal of December 21, 2005, to WDNY from Judge Ninfo's decision in *DeLano*

in his decision of August 30 (D:277/1st whereas, 279 ); **3)** at the hearing on December 15, when

he set the evidentiary hearing for March 1, 2005 (Tr.131/20-132/8); **4)** in his order of December

21, 2004 (D:332); and what he held **5)** on March 1, 2005 (Tr.132/5-8).

80. In Black's Law Dictionary, 8th edition, an evidentiary hearing is defined thus:

> :entiary nearing. 1. A nearing at wnicn evidence is presented. as opposed to a hearing at which only legal argument is presented. 2. ADMINISTRATIVE PROCEEDING.

81. FRBkrP 9014(e) concerning contested matters provides that "The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify". An evidentiary hearing is a proceed-ing for examining "witnesses with respect to disputed material factual issues", as FRBkrP 9014(d) provides, not for arguing issues of law. Hence, it is governed by FRCivP 43(a), as stated in the Advisory Committee Notes for the 2002 Amendment. This shows how misleading it is for Judge Ninfo to call an evidentiary hearing a 'trial', let alone to refer to it emphatically as a "Trial".

82. But by such ruse, Judge Ninfo criticizes Dr. Cordero for not having deposed other parties or taken discovery of them (D:14). Had Dr. Cordero done so, he would have walked right into the Judge's trap of trying *Pfuntner*, artificially limited to Dr. Cordero's claim therein against Mr. DeLano, within *DeLano*. In one fell swoop the Judge would have eliminated Dr. Cordero from both cases so as to insulate the local parties from liability to him. But Dr. Cordero had anticipated that ruse and objected to it (D:444§I) because his claim against Mr. DeLano cannot be disposed of in isolation from all the other issues in *Pfuntner* (D:444§I, Tr.186/10-187/20), lest the remaining parties resort to the expedient of off-loading their liability onto the dismissed parties, e.g. Trustee Gordon (D:393§1), and Judge Ninfo accept their ploy. (Tr.177/19-178/9) Thereby Dr. Cordero would be left to suffer the consequences of their negligence, recklessness, and fraud in dealing with his stored property without anybody being found responsible for its

loss or damage (Add:597§B).

83. This is not the first time that Judge Ninfo tries to mislead his appellate peers by pretending that he had moved the case along to a trial (Add:749) although the proceeding that he had held was nothing but a hearing by the terms of his own previous orders (D:430§A; Add:724). His conduct shows him not to be trustworthy.

### h. Judge Ninfo shows blatant bias and bad faith in criticizing Dr. Cordero for not filing a "Pretrial Memorandum of Law", a type of paper not even mentioned in the rules, never required of him, and not filed by ~~~er. who also filed no memorandum of law to support his motion to disallow

84. By referring to a "Trial", Judge Ninfo fabricated a pretext for his criticism that "Cordero did not file a Pretrial Memorandum of Law...regarding the merits of the Cordero Claim". (D:14) However, in connection with the motion to disallow, he only referred to an "evidentiary hearing" (¶79 above), which is for taking testimony, not for presenting legal arguments (¶81 above). So there was neither notice nor expectation that such paper had to be filed. Indeed, such term, let alone a related filing obligation, is not even contained in **1)** the FRCivP, **2)** the FRBkrP, **3)** the local rules of the Bankruptcy Court, **4)** the local rules of the District Court, **5)** Moore's Manual--Federal Practice and Procedure, 2004 ed., or **6)** Federal Litigation Guide, 2004 ed., by Matthew Bender & Co.

85. It is sheer bias that Judge Ninfo did not request any "Pretrial Memorandum of Law" from Att. Werner, who filed none, yet the Judge did not fault him therefor. Nor did he require Att. Werner to provide, let alone criticize him for not providing, a "Memorandum of Law" to support his motion to disallow. Nevertheless, Att. Werner had an obligation to provide not only such memorandum, but also substantial evidence to overcome the claim's presumption of validity under FRBkrP 3001(f) (¶94 below).

86. By contrast, Dr. Cordero wrote and filed several memoranda of law where he **1)** discussed on April 25 the validity of his claim (D:118¶1; 128§I), after which Att. Werner dropped the

challenge to it and did not renew it even though Dr. Cordero filed his proof of claim on May 15 (D:142); **2)** argued that Mr. Werner's July 22 challenge was untimely and barred by laches (D:255§VI, 447§A); **3)** demonstrated that the motion to disallow his claim was an artifice to eliminate Dr. Cordero from the case (D:253§V, 370§C, D:, 453¶39); **4)** contended that the motion could not overcome the presumption of validity attached under FRBkrP 3001(f) to Dr. Cordero's claim (D:256§VII, 446§II); and **5)** indicated that there was no justification for estimating the value of his claim because it was not legally necessary to distribute the assets and close the case at that time (D:450§§C-D). Yet Judge Ninfo disregarded the law, the rules, and the facts to dispose with a mere conclusory statement of Dr. Cordero's arguments on untimeliness and laches (D:372¶50) and on the motion as a process-abusive artifice (D:277/2""¶). Worse still, the Judge betrayed his failure even to read such memoranda in breach of his duty to inform himself of a submission before ruling on it by stating "Cordero did not...make any other written submission regarding the merits of the Cordero Claim" (D:14)...or is he making an intentionally misleading statement to his peers to present Dr. Cordero in a false light?

87. It would have made no difference if Dr. Cordero had submitted a "Pretrial Memorandum of Law" since, as Judge Ninfo put it, "Cordero has filed a great number of motions and made numerous requests for relief" (D:8) in which he argued the law and the rules (D:231, 317, 355, 385, 426, 441; Add:535/entries 22, 75, 78, 93, 111, 157)...to no avail, for the Judge has skipped any discussion of his citations and arguments and jumped into his requested relief to deny it with his this-is-so-because-I-say-so orders, even resorting to sweeping "in all respects denied" fiats (D:327¶1; Add:548/entry 145, 1125). Judge Ninfo's faulting Dr. Cordero, but not Att. Werner, for not having filed a nowhere described and never required "Pretrial Memorandum of Law" was biased and done in bad faith.

### i.  Judge Ninfo pretends to provide legal authority, without discussing

**it, for his decision, which on the contrary shows that with disregard for the law he disallowed the claim**

88. Judge Ninfo opened "The Claim Objection Proceeding" section of his decision (D:10 & Add:637) by quoting 11 U.S.C. §502(a) and FRBkrP 3001(f) only to continue with a showing of his disregard for the law due to his unwillingness or inability to analyze it and then apply it to the facts.

89. Indeed, §502(a) provides that once a claim has had its proof filed, it "is deemed allowed" unless a party in interest objects because "the procedure for the allowance of claims for which there are no objections is an administrative proceeding by operation of Rule 3001(f), requiring no judicial participation", as stated at the top of the same page where appears Judge Ninfo's citation to Norton Bankr. L & Prac. 2d §41:7 (D:11/fn.5; Add:645). Hence, neither the clerk nor the court is empowered to take the initiative to review the proof substantively to determine whether the claim is valid in light of some unspecified, arbitrary criteria. It is only upon the objection of a party in interest that the court can take action. (*In re G. Marine Diesel Corp.*, 155 B.R. 851 (Bkr. E.D.N.Y. 1993)(because a properly executed and filed claim is deemed allowed in bankruptcy proceeding, the objecting party has the initial burden of producing sufficient evidence to rebut the claimant's prima facie case.)

90. Consequently, the court's action is not to review either the claim or its proof, for FRBkrP 3001(f) provides that the filing of a proof of claim "shall constitute prima facie evidence of the validity and amount of the claim". This means that "the burden is on the objecting party to go forward with evidence establishing the basis of the objection", as stated by Judge Ninfo's citation to Norton §41:7 (Add:645) The court can only review the **objection** to determine whether it overcame the presumption of validity already attached to the claim. Judge Ninfo disregarded his duty to review the objection, and instead took it upon himself to review the claim (D:11):

> Since Cordero failed to attach to the Cordero Claim those pages of the Cordero Premier Claims that specifically dealt with his alleged claims against DeLano, the Court made this statement only after it had reviewed

derail the Cordero Claim. DeLano's Objection to the Claim and the Cordero Premier Claims.

91. Judge Ninfo had no authority either to expect or require that any specific pages or documents be attached to Dr. Cordero's proof of claim. Nor could he take the initiative to go fetch any pages to determine whether Dr. Cordero had established a valid claim. By so doing, he impermissibly denied the claim's presumptive validity and took on the role of the objecting party, thereby becoming Mr. DeLano's advocate and forfeiting his position as an impartial judge.

92. The fact is that the motion to disallow (D:218) does not even mention "those pages of the Cordero Premier Claims". So unaware of "those pages" were Mr. DeLano and Att. Werner that they were nor even sure what Dr. Cordero's claim was all about, thus writing "Claimant **apparently** asserts a claim relating to a pending Adversary Proceeding in Premier Van Lines (01-20692) relating to M&T Bank" (emphasis added; id). But Att. Werner did not have a clue of where to find "those pages". His actions at the evidentiary hearing confirm (¶73 above) that he did not have Dr. Cordero's complaint containing his claim against Mr. DeLano, had not read them, and did not know even remotely what they "specifically dealt with", whereby he could not refer to them when objecting to the claim (Tr.64/4-67/21). Had he read them, he would have known to refer the court to 'an Adversary Proceeding in *Pfuntner v. Gordon et al* (02-2230)', rather than *Premier*. The latter was a bankruptcy case, had practically ended about a year before the commencement of *Pfuntner* when Mr. Palmer stopped participating in his own case, and in which Mr. DeLano was not a named party. Moreover, that "pending Adversary Proceeding" was not merely "relating to M&T Bank", but instead concerned Mr. DeLano directly as a named third-party defendant. Hence, Judge Ninfo, left to his own devices, mistakenly referred to "a cross-claim that Cordero had asserted against DeLano" (D:3). These people did not know what they were talking about!

93. How thereby Att. Werner doomed the objection is unwittingly confirmed by Judge Ninfo, who pretended to cite authority but disregarded its implications or was unable to apply it to the facts:

> The Second Circuit has clearly ruled that once the objecting party introduces substantial evidence in opposition, the burden shifts to the claimant to establish by a preponderance of the evidence that their claims are allowed under the law. (emphasis added; D:11 fn.5)

94. All Att. Werner filed on July 22, 2004, was a *stick-it*-like note in an Objection to Claim form (D:218):

> Claimant sets forth no legal basis substantiating any obligation of Debtors. Claimant apparently asserts a claim relating to a pending Adversary Proceeding in Premier Van Lines (01-20692) relating to M & T Bank, for whom David DeLano acted only as employee and has no individual liability. Further, no liability exists as against M & T Bank. No basis for claim against Debtor Mary Ann DeLano, is set forth, whatsoever.

95. If that is "substantial evidence", what would plain 'evidence' be? Black's Law Dictionary defines it:

> evidence, n. Something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact.

96. What Att. Werner provided was his personal opinion, which under no legal standard constitutes "evidence", and is not even proper to offer, let alone admissible (EC 7-24, ABA MCPR, Add:552). His opinion does not even reach the level of a legal argument, just barely that of a conclusory assertion (D:251§§II-IV). Since it is not evidence, then as stated in what Judge Ninfo unreflectively copied, it cannot be "sufficient to rebut the presumption of validity, [and no] burden of proof shifts to the claimant" (D:11/fn. 5 & Add:637/fn.5). He would have realized this had he read his own citations: "The party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity.n5a", 9 Collier on Bankruptcy § 3001.09 [2] (Add:649). "Evidence must be offered by the objecting party to overcome the prima facie case", Norton Bankr. L & Prac. 2d §41:6 (Add:645). "Substantial evidence" must consist of financial information and factual arguments, not legal rhetoric", (Norton §41:8, Add:648/fn.93); or as stated in 9C Am. Jur 2d Bankr. §2368, cited by Judge Ninfo in his pretense at legal research (D:11/fn.5 & Add:637/fn.5) but either not read or deliberately ignored: "if the objecting party produces little[30] or no evidence, the claimant will prevail[31]...mere denial of the claim's validity or amount will not suffice[34]", (Add:640-641). (*In*

*re Michigan-Wisconsin Transp. Co., 161 B.R. 628 (Bkr. W.D. Mich. 1993)*(A party objecting to a claim must present affirmative evidence to overcome presumptive validity of a properly filed proof of claim; only after this has been done does the burden of persuasion shift to the creditor) Att. Werner presented no evidence whatsoever; consequently, he could not have rebutted the presumption of validity that attached to Dr. Cordero's proof of claim.

97. It attached when Dr. Cordero filed the official proof of claim form. In ¶8 it states (D:142): "If the documents are voluminous, attach a summary". So he attached key pages of the 31-page third-party complaint in *Pfuntner* containing his claim against Mr. DeLano and wrote in bold characters at the top of the first page: **"Summary of documents supporting Dr. Richard Cordero's proof of claim..."** (D:144) .Those pages were a proper summary since he had served on Mr. DeLano the whole complaint. (Add:785; 534/after entry 13) So aware was Mr. DeLano of the claim therein that he listed it when filing his petition (D:27/Sch.F) and was accompanied by his lawyer for that claim, Att. Beyma, to the meeting of creditors and the evidentiary hearing (Tr.2/9-12).

98. Judge Ninfo then cited *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000). (D:11/fn.5 & Add:637/fn.5) If he had only read it, even he might have realized that it has nothing to do with *DeLano*, but if it does, "Thus, in *Raleigh*...the Supreme Court held that the debtor [cf. Mr. DeLano!] bears the burden of proof in objecting to a proof of claim filed by the United States for federal employment taxes because it is the debtor's burden under substantive state law"...wait a moment!, this is in the Judge's own citation, 9 Collier on Bankruptcy §3001.09 (id.; Add:649) But because the Judge did not read either Collier or *Raleigh*, he did not realize that by citing them he was putting the burden of proof squarely on Mr. DeLano's shoulder! What a self-indictment by Judge Ninfo of his capacity to do legal research and apply the law to the facts at hand!

99. No wonder Judge Ninfo did not bother to cite anything more pertinent than *In re Youroveta* (D:11/fn.5 & Add:637/fn.5; Add:651) and *In re Burrows* (id.; Add:654), for the proposition that

"the ultimate burden to prove a valid and allowable claim rests with the creditor" (D:11 & Add:637), whereas he did not show a hint of awareness that the fact that those cases date back to 1924 and 1946, respectively, deprives them of authority therefor. This is so because in their days there was no official rule, not even clear dictum, giving a proof of claim prima facie validity. Rule 3001(f) was adopted only **decades** later. It formed part of the Federal Rules of Bankruptcy Procedure prescribed by the Supreme Court on April 25, 1983, where it became the current version of Rule 301(b) (411 U.S. 1042) of the former Bankruptcy Rules and Official Forms, which were first prescribed by the Supreme Court on April 24, 1973, pursuant to 28 U.S.C. §2075, (411 U.S. 989; 11 U.S.C.A. Bankruptcy Rules, pg. XXVII) and became effective on July 1, 1975 (Pub. L. 93-593, §3, Jan. 2, 1975, 88 Stat. 1959).

100. A century ago, it was still an open question "whether the sworn proof of claim is prima facie evidence of its allegations in case it is objected to…whether the sworn proof is evidence at all" (Add:652). This was a quote from Holmes, J., in *Whitney v. Dresser*, 200 U.S. 532, 534, 26 S.Ct. 316,317, 50 L.Ed. 584 (1906). *Youroveta* pointed out that "The common statement of the rule in matters like this is that, under Whitney…a sworn proof of claim puts the "burden of proof" on the objecting trustee. This is not an accurate statement [of what] Holmes, J., remarked" (id). Yet, *In re Burrows* states that "it is true that the proofs filed established the claims prima facie" (Add:655). This shows the unsettled state in those days of the evidentiary effect to be accorded a proof of claim. Hence, it is imprudent for a lawyer today who has read both cases, let alone one who has not, to cite them in support of a proposition that rests on such an unsettled basic statement.

101. The imprudence is particularly gross since one of those cases, *Youroveta*, applied the statement from Holmes, J., that "It is not a question of the burden of proof in a technical sense, a burden which does not change, whatever the state of the evidence", which negates the proposition for which Judge Ninfo cited it since the issue of an "ultimate burden" (D:11 & Add:637) could not arise because the

burden did not shift to begin with. Did Judge Ninfo try to take his appellate peers for fools because he knew that they would not bother to check his citations just as he did not bother to read them?

102. Not only does he not read his "authority", but he also disregards its mandate, which provides:

> An objection should state the grounds as to why the claim should be denied by giving facts and citing one of the nine subparagraphs of §502(b). A general objection without specific reference to a proper ground may be an insufficient objection and is subject to a motion to dismiss at, or prior to, a hearing. Norton Bankr. L & Prac. 2d §41:8 (D:11 fn.5, Add:637/fn.5; 648; cf. ¶75 above)

103. Att. Werner failed to provide any such grounds, just as did Judge Ninfo, who had a duty to do so, as stated in 11 U.S.C. §502's Historical and Statutory Notes, Revision Notes and Legislative Reports, 1978 Acts: "Subsection (b) prescribes the grounds on which a claim may be disallowed. The court will apply these standards if there is an objection to a proof of claim".

104. Judge Ninfo does not even show awareness that §502(b) contains the grounds for disallowance, let alone that a "claim may be disallowed, not for just any reason, but only for one of the reasons enumerated by Congress; [for a] bankruptcy court has no discretion in this regard and cannot disallow a claim for reasons beyond those stated in statute", *In re Taylor*, 289 B.R. 379 (Bkr. N.D. Ind. 2003). Disregarding the law and instead engaging in "local practice" (D:98§II), the Judge granted the motion to disallow in order to protect the DeLano Locals (D:370§C) and biasedly injured Non-local Dr. Cordero (D:392§I). Hence, his decision to disallow his claim against them is a nullity because the motion to disallow was the DeLanos' artifice and the evidentiary hearing Judge Ninfo's sham to eliminate Dr. Cordero before he could prove a bankruptcy fraud scheme.

**j. Judge Ninfo has shown such bias against Dr. Cordero and in favor of the local parties as to require the nullification of his decisions and his disqualification under 28 U.S.C. §455(a), which the Supreme Court has stated calls only for the appearance, not the reality, of bias and prejudice**

105. Section 455(a) of 28 U.S.C. provides as follows:

...w iustice. iudge, or magistrate judge of the United States **shall** disqualify himself in any proceeding in which his impartiality **might** reasonably be questioned. (emphasis added)

106. The Supreme Court recently reaffirmed in *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (REHNQUIST, C. J.) the standard for interpreting and applying this section thus:

> As this Court has stated, what matters under §455(a) "is not the reality of bias or prejudice but its appearance." *Liteky v. United States, 510 U. S. 540, 548 (1994)*. This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances. *See ibid.; In re Drexel Burnham Lambert Inc., 861 F. 2d 1307, 1309 (CA2 1988)*.

107. Those surrounding facts and circumstances are to be assessed by "the 'reasonable person' standard which [28 U.S.C. §455(a)] embraces", *Microsoft Corp.* at 1303. (Cf. D:418)

108. The bias that Judge Ninfo has shown toward the DeLanos and the other local parties and against Non-local Dr. Cordero has infected all his decisions in *DeLano* as well as in the case that gave rise to Dr. Cordero's claim in it, that is, *Pfuntner*. Indeed, the Judge has inextricably linked both cases by stating in the *DeLano* decision on appeal (D:3) his findings of fact and conclusions of law about *Pfuntner* although discovery in the latter under FRBkrP 7026 and FRCivP 26 has not yet begun. Thereby he has prejudged the outcome of *Pfuntner* and done so to Dr. Cordero's detriment (Add:854§§I and IV). He has even given notice in the *Pfuntner* docket of his *DeLano* decision on appeal here and related it to a 2003 decision in *Pfuntner* (Add:549/after entry 156).

109. In effect, he has consolidated both cases. They now contain compelling evidence of his bias, his blatant failure to provide legal authority for his rulings, and his gross mistakes of fact. His decisions and conduct in those cases as well as the conduct of trustees, court staff, and other local parties show them to have participated in a series of acts of disregard for the law, the rules, and the facts so consistently in favor of the local parties and against Dr. Cordero as to form a pattern of non-coincidental, intentional, and coordinated wrongdoing (D:392§I) in support of a common agenda: a bankruptcy fraud scheme. To protect it, he allowed the DeLanos' motion to disallow

Dr. Cordero's claim despite the motion's procedural and substantive defects (D:249), ordered Dr. Cordero to take discovery of Mr. DeLano in *Pfuntner* only to deny him every single document that he requested from Mr. DeLano, and then conducted a sham of an evidentiary hearing (D:378§2) in which he arbitrarily disregarded Mr. DeLano's admissions against self-interest and disallowed Dr. Cordero's claim. Consequently, Judge Ninfo has denied Dr. Cordero due process of law (cf. Add:613§C; Add:591§III.A). His bias and disregard for legality require his disqualification from both cases; render his decisions in both a nullity; and justify in the interest of justice the removal under 28 U.S.C. §1412 of both cases to an impartial court in another district.

### 2. Local Rule 5.1(h) suspiciously singles out RICO claims by requiring exceedingly detailed facts just to file them, thus violating notice pleading under FRCivP

110. The General Rules of Pleading of FRCivP 8(a)(2) ask only for "a short and plain statement of the claim showing that the pleader is entitled to relief"; and 8(e) adds that "each averment of a pleading shall be simple, concise, and direct". For its part, FRCivP 83(a)(1) provides that "A local rule shall be consistent with –but not duplicative of– Acts of Congress and rules adopted under 28 U.S.C. §2072 and §2075". As stated in the Advisory Committee Notes, 1985 Amendment to Rule 83, local rules shall "not undermine the basic objective of the Federal Rules", which FRCivP 84 sets forth as "the simplicity and brevity of statement which the rules contemplate". Thereby the national Rules, as indicated in the 1995 Amendments to Rule 83, aim at preventing that a local rule with "the sheer volume of directives may impose an unreasonable barrier". In that vein, the court in *Stern v. U.S. District Court for the District of Massachusetts*, 214 F.3d 4 (s 1ˢᵗ Cir. 2000) stated that "Even if a local rule does not contravene the text of a national rule, the former cannot survive if it subverts the latter's purpose".

111. Yet such barrier is precisely what the District Court, WDNY, erects with its Local Rule 5.1(h)

(Add:633), which requires a party to provide over 40 discrete pieces of factual information to plead a claim under RICO, 18 U.S.C. §1961. This contravenes the statement of the Supreme Court that to provide notice, a claimant need not set out all of the relevant facts in the complaint (*Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987)). On top of this quantitative barrier a qualitative one is erected because the required information is not only about criminal, but also fraudulent conduct. The latter, by its very nature, is concealed or disguised, so that it is all the harder to uncover it before even disclosure, not to mention discovery, has started under FRCivP 26-37 and 45.

112. Even the requirement of FRCivP 9(b) that fraud be pled with particularity is "relaxed in situations where requisite factual information is peculiarly within defendant's knowledge or control", *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). This means that even in fraud cases the purpose of the complaint is to put defendants on notice of the claim, not to allow the court to prevent the filing of the case or enable it to dismiss the claim on the pleadings.

113. Local Rule 5.1(h) refers to FRCivP 11 only to improperly replace its relative and nuanced standard of "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances", by the absolute and strict standard of "facts [that the party] shall state in detail and with specificity us[ing] the numbers and letters as set forth below in a separate RICO Case Statement filed contemporaneously with those papers first asserting the party's RICO claim". To require "facts...in detail and with specificity" is inconsistent with FRBkrP 9011(b)(3), which allows the pleading of "allegations and other factual contentions...likely to have evidentiary support after a reasonable opportunity for further investigation or discovery". Hence, the Court in *Devaney v. Chester*, 813 F2d 566, 569 (2d Cir. 1987) stated that "We recognize that the degree of particularity should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts". By contrast, Local Rule 5.1(h)

provides no opportunity for discovery, but instead requires such "detail and specificity" in the pleadings as to make it easier to spot any "failure" to comply and "result in dismissal". This is the type of result unacceptable under the 1995 Amendments to FRCivP 83 where "counsel or litigants may be unfairly sanctioned for failing to comply with a directive".

114. It is suspicious that Local Rule 5.1(h) singles out RICO and blatantly hinders the filing, let alone the prosecution, of a claim under it. It is particularly suspicious that it does so by erecting at the outset an evidentiary barrier that so starkly disregards and defeats the Congressional Statement of Findings and Purpose that "organized crime continues to grow because of defects in the evidence-gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear the unlawful activities of those engaged in organized crime". Hence, Pub.L. 91-451 §904 provided that RICO "shall be liberally construed to effectuate its remedial purpose".

115. Given the bankruptcy fraud scheme supported by people doing business in the same small federal building housing the bankruptcy and district courts and the Offices of the U.S. Trustees, the U.S. Attorneys, and the FBI, why would a Local Rule be adopted that forestalls any RICO claim? It smacks of a pre-emptive strike carried out against any potential RICO claim through the abusive exercise of the local rule issuing power. In so doing, that Rule contravenes its enabling provision and is void. Moreover, it causes injury in fact to Dr. Cordero inasmuch as it erects an insurmountable barrier at the outset to his bringing a RICO count against the schemers, thus depriving him of the protection and vindication of his rights under that federal law.

### 3. Section 158 of title 28 U.S.C. provides for bankruptcy appellate review by judges of unequal degree of impartiality in violation of the equal protection requirements of the Due Process Clause of the Fifth Amendment of the Constitution and is unconstitutional

116. Section 158(b) of 28 U.S.C. (Add:630) allows different majorities of judges in individual districts or circuits to decide whether they want to set up or keep a bankruptcy appellate panel

(BAP). Likewise, it allows individual litigants to choose whether to let an appeal go to the BAP, if available, or to "elect to have such appeal heard by the district court" rather than the BAP initially chosen by appellant. It also allows judges and some parties to keep the appeal in district court for the time being by refusing to agree to a direct appeal to the court of appeals.

117. Section 158 prohibits any BAP judge to hear any appeal originating in his own district. The degree of independence that this provision is intended to provide is nevertheless defeated by allowing a majority of bankruptcy judges in a district to vote against the creation or retention of a BAP. Thereby they can keep appeals from their decisions in their own district and choose as their reviewer their friendly district judge, whom they may see and talk with every day. (¶27 above)

118. There is the reasonable presumption that bankruptcy judges will prefer to have one friend decide those appeals rather than three judges from other districts whom they may not even know. Hence, allowing judges to decide whether to set up a BAP goes against the protection from prejudgment and self-interest that 28 U.S.C. §47. "Disqualification of trial judge to hear appeal" intends to afford by providing that "No judge shall hear or determine an appeal from the decision of a case or issue tried by him." The presumption of favoritism by district judges toward the judges in the "adjunct" bankruptcy court to which they refer cases under 28 U.S.C. §157(a) and with whom they may be "so connected" finds support, mutatis mutando, in the Advisory Committee Notes to FRBkrP 5002, which deals with "Restrictions on Appointments", as well as FRBkrP 5004, (b) Disqualification of judge from allowing compensation.

119. This presumption also supports a challenge to the appointment of bankruptcy judges by the court of appeals rather than Congress. Indeed, after the appeals court for the circuit appoints a bankruptcy judge under 28 U.S.C. §152(a)(1), that judge becomes their appointee. When a decision by that judge comes on appeal to that court of appeals, one, two, or three circuit judges who may have been among the appointing judges must then decide, not only whether the

bankruptcy judge's decision was legally correct, but also whether they were right in voting for him. The circuit judges are not so much reviewing a case on appeal as they are examining the work of their appointee under attack. Voting to reverse his decision amounts to voting against the wisdom of their own vote to appoint him. How many circuit judges would willingly admit that they made a mistake in making an appointment to office…or for that matter, any mistake?

120. Likewise, §158 allows local litigants, who may have developed a very friendly relation with the bankruptcy judge, to elect the district judge to hear an appeal as oppose to three judges in the available BAP, on the spurious consideration that "the friend of my friend is friend". The cases at hand illustrate how likely it is for local litigants to develop a close relationship, even friendship, with the local judges to the detriment of non-local ones: According to PACER, Att. Werner has appeared before Judge Ninfo in over 525 cases; and Trustee Reiber in more than 3,900! Would local attorneys similarly situated ever think of allowing an appeal from their judicial friends to go to an available BAP where their friendship would not play a role and they would have to engage in legal research and writing and present legal arguments to defend their clients? Hardly. The importance of providing a level field where locals and non-locals argue and decide appeals on legal considerations rather than personal relations grows ever more as does "an increasingly national bar". If in recognition of the latter the Judicial Conference provides for uniformity among judicial districts in connection with setting up standards governing the technological aspects of electronic filing, then providing for equal protection under the law when local and non-local counsel clash on appeal should assume even more importance (see the Advisory Committee Notes relating to the 1996 Amendments to FRBkrP 5005, Filing and Transmittal of Papers).

121. Hence, §158(b) impairs due process and denies equal protection. By Congress not setting up in advance a system for appellate review that is uniform nation-wide and that is generally applicable to all bankruptcy cases, it failed its duty to provide for judicial process on equal terms.

## F. Conclusion and Relief Sought

122. Judge Larimer has shown himself willing to disregard the rule of law and the facts as well as unable to analyze and apply the law. Moreover, he has a conflict of interest because if he orders the production of the documents necessary for the proper determination of the issues in *DeLano* and *Pfuntner*, he also risks the finding of the whereabouts of at least two thirds of a million dollars and thereby the exposure of a bankruptcy fraud scheme and of the colleagues and others supporting it. Indeed, he has already given the appearance of partiality and of misusing his judicial power in his and the schemers' interest rather than using it in the interest of justice.

123. Therefore, Dr. Cordero respectfully requests that:

   a) All of Judge Ninfo's decisions in *DeLano* and *Pfuntner* be declared null and void; and ;

   b) Judge Ninfo be disqualified from both cases;

   c) the disallowed claim of Dr. Cordero in *DeLano* be reinstated;

   d) the proposed order attached hereto be issued, which concerns, inter alia, document production; withdrawal from the Bankruptcy Court, WBNY, and transfer to the District Court, NDNY, of *DeLano* and *Pfuntner*; removal of Trustee Reiber and appointment of a successor; production of a report on the DeLanos' financial affairs; referral of Reporter Dianetti for investigation under 28 U.S.C. §753 to the Judicial Conference as requested in Dr. Cordero's motions of July 18 and September 20, 2005, to the District Court in the instant appeal (docket entries 13 and 19 (Add:911) and 993)); and the report under 18 U.S.C. §3057(a) (Add:630) of *DeLano* and *Pfuntner* to U.S. Attorney General Alberto Gonzales;

   e) District Court Local Rule 5.1(h) be stricken down;

   f) 28 U.S.C. §158(b) be held unconstitutional.

Dated:    December 21, 2005
          59 Crescent Street
          Brooklyn, NY 11208

          _____
                  Dr. Richard Cordero
                  tel. (718) 827-9521